24

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 8 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ALMA TAITAGUE and BILL TAITAGUE | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-099 |
| | § | |
| | § | |
| ALBERTSON'S, INC. | § | |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY
## AND FOR SANCTIONS

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now come **ALMA TAITAGUE** and **BILL TAITAGUE,** Plaintiffs in the above-styled and numbered cause, and move the Court to compel discovery and sanction Defendant Albertson's, Inc., and in support thereof would show the Court as follows:

### I.
### Factual and Procedural
### Background

1.     This case evolves from an incident which occurred on May 30, 1999 at the Albertson's grocery store located in Brownsville, Texas.  Plaintiffs Alma Taitague and Bill Taitague allege that Defendant and its employees failed to inspect the store's produce department, causing Alma Taitague to slip and fall and injure her left ankle and left shoulder.  There are five known witnesses to the immediate facts surrounding this incident: Plaintiff Alma Taitague, her husband, Plaintiff Bill Taitague, and Albertson's employees Rene Cortez, Salvador Reyes Gonzalez, Jr. and Hector Betancourt.  The depositions of

1

CutePDF - www.fsesic.com

the Plaintiffs, Rene Cortez, and Salvador Reyes Gonzalez, Jr. have been taken.   Hector Betancourt's whereabouts are unknown.   Plaintiffs are attempting to obtain photographs taken at the scene of the incident, the store's surveillance tapes (which pursuant to established store procedure and the testimony of the store's representative  should have been pulled and preserved), as well as the names, addresses and telephone numbers of the store personnel responsible for the care of the produce department.

2.      Defendant has not provided any information as to Hector Betancourt's last known address and refuses to provide his personnel file to obtain his physical address or the names of persons who may know his whereabouts.  Plaintiff requests that the Court compel Defendant to produce Hector Betancourt's personnel file, and the personnel files of the other produce department employees.  (Attached as **Exhibit "A"** are Defendant's response to the relevant request for production).

3.      The parties disagree as to the length of time the key lime was on the floor, the number and frequency of the sweeps,  and the cause of Alma Taitague's fall.  Defendant admitts that it had surveillance cameras which would have captured the incident. Additionally, Defendant's employees have testified that they are, pursuant to store procedure, required to pull the surveillance tapes and ship them to risk management. Defendant's store director, Salvador Reyes Gonzalez, Jr., testified that it is his policy to pull the surveillance tapes when an incident occurs. (Attached as **Exhibit "B"** pg. 74, ln. 18 - pg. 75, ln. 6. Gonzalez Depo.)  Defendant's key manager, Rene Cortez, testified that he took photographs of Alma Taitague, and the accident scene, and told the store director to pull the surveillance tapes after her fall. (Attached as **Exhibit "C"** pg. 23 ln. 21 - pg. 26 ln.

2

6, Cortez Depo.)

4.      Plaintiffs requested the photographs and surveillance tapes through written discovery and were told that there were no photographs taken of the Plaintiff and no surveillance tapes.  (Attached as **Exhibit "D"** are Defendant's answers to interrogatories, request for admissions and request for production regarding the surveillance tapes and the photographs.)  However, the incident report provided by Alberton's Risk Management Department indicates that photos and possibly video tapes were sent to Risk Management.  *See* **Exhibit "E."**  The only photos produced to plaintiff by defense counsel were photos which were taken by Cindy Brady, an adjuster for the Littleton Group, when she interviewed Alma Taitague in her attorney's office.   *See* **Exhibit "F."**

## II.
## Arguments and Authorities

5.      For purposes of a motion to compel, evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond.  FRCP 37(a)(3); *Beard v. Braunstein*, 914 F.2d 434, 446 (3d Cir. 1990); *Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 681-82 (D. Colo. 1986) (improperly signed answers to interrogatories were treated as failure to answer).

6.      A party may move for an order compelling production after the responding party has objected.  FRCP 34(b); *see Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 541-42 (10th Cir. 1984).

7.      In spite of the fact that Plaintiffs have pinpointed the date, time and location of the incident, Defendant has failed or refused to provide the videotapes and photographs

3

to remedy the prejudice.

12.    Plaintiff requests that the Court instruct the jury to presume that the evidence destroyed would have been favorable to Plaintiff and is unfavorable to Defendant.  The Court may submit the instruction that the facts are presumed against the Defendant and that the Defendant bears the burden of disproving the presumed facts or issue.

13.    The presumption itself has probative value and may be sufficient to support the nonspoliating party's assertions.  *See Trevino*, 969 S.W.2d at 960.  In any event, at least one Texas court has held that the trial court erred in refusing to submit a spoliation instruction when the nonspoliating party had properly raised the issue. *Watson vs Brazos Elec. Power Coop, Inc.*, 918 S.W.2d 639 (Tex. App.-- Waco 1996, writ denied).

14.    Here, the circumstantial evidence implies that the videotapes were destroyed intentionally at Defendant's risk management offices in Florida.  The local employees testified that they understood the importance of the evidence recorded and one manager notified the other manager to pull and preserve the tapes, however, now that litigation has commenced, Defendant claims that the tapes have been taped over in accordance with purported "company policy."  The Court should presume that the tape was intentionally destroyed and sanction Defendant accordingly.

### III.
### Prayer

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request an order compelling Defendant to adequately respond and/or provide the items pursuant  to her First Set of Interrogatories, her First of Request for Production, for an adverse inference finding and

6

for such other and further relief, at law or in equity, to which the Plaintiffs are justly entitled.

Respectfully submitted,

Anthony P. Troiani
State Bar No.: 00795914
Federal No. 20607
LAW OFFICE OF ANTHONY TROIANI
700 Paredes Avenue, Suite 107
Brownsville, Texas 78521
(956) 541-4235 Tel.
(956) 541-9174 Fax.

ATTORNEY IN CHARGE

7

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to all counsel of record pursuant to the FRCP on this _18th_ day of April, 2001 to:

Mr. Douglas E. Chaves
CHAVES, GONZALES & HOBLIT, L.L.P.
2000 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78470

ANTHONY TROIANI

## CERTIFICATE OF CONFERENCE

A conference has been held on the merits of this Motion with opposing counsel in charge of this case and she/he is:

_____      I have been unsuccessful in my attempts to contact opposing counsel.

_____      I have been unsuccessful in my attempts to discuss this matter with opposing counsel as said attorneys have not returned my telephone calls or responded to my letter.

_X_      This matter has been discussed with opposing counsel and no agreement on the Motion could be reached.

_____      Opposing counsel has agreed or is unopposed to Movant's request under this Motion

ANTHONY P. TROIANI

8

**REQUEST FOR PRODUCTION NO. 6:** Produce a copy of any and all personnel files of employee identified in Interrogatory No. 11.

**RESPONSE:**

Defendant objects to this request for production as being an invasion of privacy of the employee in question.

**REQUEST FOR PRODUCTION NO. 7:** If not otherwise contained in their personnel file(s), please produce a true and correct copy of the following documents relating to the individuals identified in response to Interrogatory No. 11:

a.    Resume and/or Curriculum Vitae;
b.    Applications for Employment;
c.    Certifications of Credentials;
d.    Background Checks;
e.    Criminal Checks;
f.    References;
g.    Current Address and Telephone Number;
h.    Forwarding Address;
i.    Employment Contract and/or Agreement;
j.    Evaluations;
k.    Reprimands;
l.    Disciplinary Warnings;
m.    Time Cards;
n.    Time Sheets;
o.    Video Tapes; and
p.    Complaints;

**RESPONSE:**

Defendant objects to this request for production as being an invasion of privacy of the employee in question.

**REQUEST FOR PRODUCTION NO. 8:** Produce any and all documents, photographs, videotapes and other tangible things you may seek to introduce into evidence at the time of trial of this cause.

**RESPONSE:**

This Defendant will supplement this request.

**REQUEST FOR PRODUCTION NO. 9:** Produce any store surveillance video tapes taken of the area where the alleged incident at issue in this lawsuit occurred.

15:12:10 1    anymore.

15:12:12 2         Q.  Would it be possible for you all to look and

15:12:12 3    see if you have them?

15:12:14 4         A.  I can ask.  For '99?

15:12:16 5         Q.  For '99.

15:12:18 6         A.  Okay.

15:12:20 7         Q.  Now, can you show me what the line of sight is,

15:12:24 8    if you know, on these two?  I know that you had

15:12:29 9    verbally told me.

15:12:29 10        A.  This one you can see the wet rack up to here

15:12:32 11   and so forth.  I couldn't tell you the square footage

15:12:37 12   because I don't know.  But, you know, that's pretty

15:12:41 13   much it right there.  It would pick up some of the

15:12:44 14   tables.  It would pick up -- basically pick up the

15:12:46 15   aisle right here is what we're looking at.  And we're

15:12:50 16   looking in front of the wet rack.  We're looking in

15:12:52 17   front of this wet rack right there.

15:12:53 18        Q.  Okay.  And how -- the items that are displayed

15:13:01 19   on these cameras, where does that tape go to?  Or is

15:13:07 20   there like a master continuous run tape, or how do you

15:13:09 21   have it set up as far as your playback?

15:13:12 22        A.  As far as for reviewing it?

15:13:14 23        Q.  For reviewing it or storing it.

15:13:17 24        A.  We store them for a month, and then we reuse

15:13:19 25   them.

BRYANT & STINGLEY, INC.
McAllen        Harlingen        Brownsville
(956) 618-2366    (956) 428-0755    (956) 542-1020

15:13:20  1      Q.   Even if you have an incident?

15:13:22  2      A.   No.   No, we pull it.   We pull it and we set it

15:13:26  3  aside.   We send it to our Boise people.

15:13:31  4      Q.   Okay.   And so if there was an incident on May

15:13:33  5  30th, 1999, you would have pulled those tapes?

15:13:37  6      A.   They should have been pulled.

15:13:38  7      Q.   Okay.   And if they weren't pulled, that was a

15:13:44  8  breakdown in the chain of command?

15:13:46  9      A.   If they weren't pulled, there was

15:13:49 10  miscommunication.

15:13:51 11      Q.   And do you know if those tapes were pulled?

15:13:53 12      A.   No, sir, I don't know.

15:13:55 13      Q.   Okay.   Fair enough.

15:13:58 14      A.   I honest to God don't.

15:14:01 15      Q.   I guess since you made this --

15:14:06 16      A.   But that's not, you know, exactly how

15:14:09 17  everything is.

15:14:10 18      Q.   No, I'm just asking for what you know.   I'm not

15:14:15 19  trying to say this is how it was arranged or anything.

15:14:25 20           What about -- okay.   When you do the

15:14:27 21  incident report, what are you taught or what are you

15:14:34 22  supposed to do when you fill out an incident report?

15:14:37 23  What do you tell your managers to do when they fill out

15:14:41 24  incident reports?

15:14:42 25      A.   First of all, they have to fill out all the

15:48:51 1      A.  Yes.

15:48:53 2      Q.  And how are they -- or how were they

15:48:58 3  merchandised at that -- well, you're not in the produce

15:49:00 4  section, are you?

15:49:01 5      A.  No, I'm not.  But I know how they were

15:49:04 6  merchandised.

15:49:06 7      Q.  How were they merchandised?

15:49:07 8      A.  They were just put on top, but they weren't in

15:49:10 9  boxes.

15:49:10 10     Q.  The key limes are small and round?

15:49:13 11     A.  Yeah.

15:49:14 12     Q.  And they fall off easily, correct?

15:49:16 13     A.  Yeah, they do.

15:49:17 14     Q.  Okay.  And it was a high traffic day that day,

15:49:24 15  right?

15:49:24 16     A.  Yes.

15:49:27 17     Q.  A lot of people coming in looking through

15:49:31 18  different sections of the store.  Do you know if there

15:49:34 19  was high volume in the produce section that day?

15:49:37 20     A.  I don't know because I'd just came in.

15:49:41 21     Q.  That's right.  That's fine.  Did you take any

15:49:46 22  photographs of Ms. Taitague?

15:49:49 23     A.  Yes, I did.

15:49:50 24     Q.  Okay.  What photographs did you take?

15:49:52 25     A.  I think I took some pictures of the floor, and,

15:49:57 1    I guess, of her ankle.

15:50:01 2        Q.  Okay.

15:50:01 3        A.  Things like that.  I know I took pictures.

15:50:06 4        Q.  And who did you give the photos to?

15:50:09 5        A.  I gave them to my store director.

15:50:11 6        Q.  And then do you know what he was supposed to do

15:50:14 7    with the photos after that?

15:50:16 8        A.  I believe he was supposed to send -- I believe

15:50:19 9    they're supposed to get sent to the claims office.

15:50:21 10       Q.  Okay.  So you recall taking photos of the

15:50:24 11   floor, of her ankle, of her shoes?

15:50:27 12       A.  Shoes.  Her ankles, and her shoes were right

15:50:31 13   there too.

15:50:32 14       Q.  Right, she was wearing her shoes at the time.

15:50:35 15   Do you recall taking photos of the display stands or

15:50:39 16   the area where she fell other than just the floor?

15:50:51 17       A.  I don't remember.

15:50:52 18       Q.  Okay.  You may or may not have?

15:50:55 19       A.  Yeah.

15:50:55 20       Q.  Okay.  What about the surveillance cameras?  Do

15:51:03 21   you have anything to do with pulling those tapes

15:51:05 22   because there is an incident?

15:51:07 23       A.  No, I let the store director know.

15:51:10 24       Q.  Okay.  And that day it would have been a store

15:51:12 25   manager since the store director wasn't in, right?  Or

BRYANT & STINGLEY, INC.
        McAllen          Harlingen          Brownsville
    (956) 618-2366   (956) 428-0755   (956) 542-1020

| | | |
|---|---|---|
| 15:49:57 | 1 | I guess, of her ankle. |
| 15:50:01 | 2 | Q.  Okay. |
| 15:50:01 | 3 | A.  Things like that.  I know I took pictures. |
| 15:50:06 | 4 | Q.  And who did you give the photos to? |
| 15:50:09 | 5 | A.  I gave them to my store director. |
| 15:50:11 | 6 | Q.  And then do you know what he was supposed to do |
| 15:50:14 | 7 | with the photos after that? |
| 15:50:16 | 8 | A.  I believe he was supposed to send -- I believe |
| 15:50:19 | 9 | they're supposed to get sent to the claims office. |
| 15:50:21 | 10 | Q.  Okay.  So you recall taking photos of the |
| 15:50:24 | 11 | floor, of her ankle, of her shoes? |
| 15:50:27 | 12 | A.  Shoes.  Her ankles, and her shoes were right |
| 15:50:31 | 13 | there too. |
| 15:50:32 | 14 | Q.  Right, she was wearing her shoes at the time. |
| 15:50:35 | 15 | Do you recall taking photos of the display stands or |
| 15:50:39 | 16 | the area where she fell other than just the floor? |
| 15:50:51 | 17 | A.  I don't remember. |
| 15:50:52 | 18 | Q.  Okay.  You may or may not have? |
| 15:50:55 | 19 | A.  Yeah. |
| 15:50:55 | 20 | Q.  Okay.  What about the surveillance cameras?  Do |
| 15:51:03 | 21 | you have anything to do with pulling those tapes |
| 15:51:05 | 22 | because there is an incident? |
| 15:51:07 | 23 | A.  No, I let the store director know. |
| 15:51:10 | 24 | Q.  Okay.  And that day it would have been a store |
| 15:51:12 | 25 | manager since the store director wasn't in, right?  Or |

15:51:15 1     tell me how it happened.

15:51:18 2        A.  How what happened?

15:51:19 3        Q.  How you told the store director about the

15:51:23 4     incident.

15:51:23 5        A.  How I told him?

15:51:25 6        Q.  Let me back up.

15:51:26 7        A.  Basically I took the report, and I let him know

15:51:29 8     that there was a lady that fell.  I know that every

15:51:33 9     time somebody falls we're supposed to pull the tapes,

15:51:40 10     and I let him know.

15:51:41 11        Q.  Who did you let know specifically?

15:51:44 12        A.  I think I let Mr. Gonzalez know.

15:51:48 13        Q.  Sal Gonzalez?

15:51:49 14        A.  Yes.

15:51:50 15        Q.  He was there that day or the next day?

15:51:53 16        A.  No, he was there.

15:51:54 17        Q.  On May 30th?

15:51:57 18        A.  Yeah.

15:51:57 19        Q.  Okay.  Okay.  And so whenever there is an

15:52:06 20     incident, you pull the tapes, right?

15:52:08 21        A.  Yeah, we'll let the other managers know and

15:52:12 22     also the store director.

15:52:13 23        Q.  You personally don't pull the tapes, but it's

15:52:15 24     company policy or store policy to pull the tapes from

15:52:17 25     that day?

15:52:18  1      A.  Yes.

15:52:19  2      Q.  And you took the photos like you were supposed

15:52:21  3  to?

15:52:22  4      A.  Right.  And I did the report, and I let them

15:52:26  5  know that there was a lady that fell and to pull the

15:52:31  6  tapes.

15:52:32  7      Q.  Okay.

15:52:33  8      A.  And from there I did the report and I put it on

15:52:37  9  his desk.  We're supposed to call it in.  We called it

15:52:41 10  in.

15:52:41 11      Q.  Who do you call it in to?

15:52:46 12      A.  It's called central reporting.  I believe it's

15:52:47 13  up in Boise.  They ask you -- they ask you the

15:52:51 14  questions and things like that, and they give you a

15:52:53 15  claim number, and you write it on the top.  You turn it

15:52:57 16  in to the store director along with everything else

15:53:01 17  that you took, like the pictures and everything.

15:53:04 18      Q.  Since you took down all the incident reports,

15:53:08 19  how many incident reports do you have to take on a

15:53:12 20  weekly basis normally at the store?

15:53:15 21      A.  On a weekly basis?

15:53:16 22      Q.  Yeah.

15:53:20 23      A.  I think it would be -- because it's four of us

15:53:24 24  there that take incident reports, and I don't know how

15:53:30 25  many there are a week.  But, as for me, not that many.

BRYANT & STINGLEY, INC.
McAllen           Harlingen          Brownsville
(956) 618-2366    (956) 428-0755    (956) 542-1020

**ANSWER:**

Plaintiff contributed to her fall by not noticing the key lime on the floor. Plaintiff has also had pre-existing injuries and conditions which contribute to her current physical complaints.

**INTERROGATORY NO. 6:** Did you or any of your agents or employees, render any assistance or support of any kind to Plaintiff Alma Taitague after the alleged incident? If so, describe:

a) what kind of assistance or help was given to the Plaintiff(s);

b) the name and address of each person rendering assistance;

c) whether the person rendering assistance has any special medical or emergency skills or training.

**ANSWER:**

Mr. Taitague was assisted by Albertson's employee Rene Cortez who obtained her report of the slip and fall. She complained only of left ankle pain at the time. Mr. Cortez does not have any medical training.

**INTERROGATORY NO. 7:** Give a detailed account of the Plaintiff Alma Taitague's appearance immediately after the alleged incident, describing:

a) her physical condition, including any apparent signs of injury, bleeding, bruises, cuts, or abrasions;

b) her apparent emotional or mental condition (e.g., whether she was crying, screaming, talking, complaining of pain, requesting help): and

c) the appearance of her clothing, indicating whether any part of it was disarranged, torn, dirty or otherwise affected by the alleged incident.

**ANSWER:**

Mrs. Taitague did not have any bleeding, cuts or abrasions. Her clothing did not appear to be torn or dirty. She complained her left ankle hurt.

**INTERROGATORY NO. 8:** Were any photographs taken of Plaintiff Alma Taitague's injuries at the time of the alleged incident? If so, state who has custody, control and possession of said photographs?

**ANSWER:**

No.

**INTERROGATORY NO. 9:** Please state whether you or anyone acting on behalf of the Defendant has secured or obtained, or has any knowledge of, any accident report made by the Plaintiffs pertaining in anyway to the alleged incident.

**ANSWER:**

After Plaintiff reported her slip and fall, a report was made. This report has already been produced to Plaintiff's counsel.

**INTERROGATORY NO. 10:** If you or any agent or employee of the Defendant received notice of any kind from the Plaintiffs or someone on behalf of the Plaintiffs of the alleged incident, please give the date of receipt, the method by which notice was given and the substance of such notice.

**ANSWER:**

Notice was given of the slip and fall on the date of the accident by Plaintiff.

**INTERROGATORY NO. 11:** Identify each and every employee of Defendant who came into contact with Plaintiffs on May 30, 1999.

**ANSWER:**

Rene Cortez

**INTERROGATORY NO. 12:** If said individuals identified above in Interrogatory No. 11 are no longer employed with Albertson's, Inc., please provide their last known address and telephone number.

**ANSWER:**

Not applicable.

**INTERROGATORY NO. 13:** Identify the personnel and/or management team responsible for the care, custody or control of Albertson's, Inc. on May 30, 1999.

**ANSWER:**

Sal Gonzalez

# REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Produce any recordings of any communications identified in Interrogatory No. 3.

**RESPONSE:**

   This Defendant will supplemental this request.

**REQUEST FOR PRODUCTION NO. 2:** Produce any written communication identified in Interrogatory No. 3.

**RESPONSE:**

   This Defendant will supplement this request.

**REQUEST FOR PRODUCTION NO. 3:** Produce all documents and tangible things that support your answer to Interrogatory No. 5.

**RESPONSE:**

   This Defendant will supplement this request.

**REQUEST FOR PRODUCTION NO. 4:** Produce each photograph, motion picture, video tape recording, map, chart, diagram, measurement, survey, tape recording or other documents, recording or other tangible things which concern the events made the basis of this lawsuit or in any manner relate to damages suffered by any person.

**RESPONSE:**

   Photographs may be reviewed in defense counsel's office, 418 East Dove, McAllen, Texas, Monday through Friday, 8:30 a.m. to 5:00 p.m. upon reasonable notice.

**REQUEST FOR PRODUCTION NO. 5:** Produce any accident report identified in Interrogatory No. 9.

**RESPONSE:**

   Attached please find a copy of the accident report.

**REQUEST FOR PRODUCTION NO. 6:** Produce a copy of any and all personnel files of employee identified in Interrogatory No. 11.

**RESPONSE:**

      Defendant objects to this request for production as being an invasion of privacy of the employee in question.

**REQUEST FOR PRODUCTION NO. 7:** If not otherwise contained in their personnel file(s), please produce a true and correct copy of the following documents relating to the individuals identified in response to Interrogatory No. 11:

a.      Resume and/or Curriculum Vitae;
b.      Applications for Employment;
c.      Certifications of Credentials;
d.      Background Checks;
e.      Criminal Checks;
f.      References;
g.      Current Address and Telephone Number;
h.      Forwarding Address;
i.      Employment Contract and/or Agreement;
j.      Evaluations;
k.      Reprimands;
l.      Disciplinary Warnings;
m.      Time Cards;
n.      Time Sheets;
o.      Video Tapes; and
p.      Complaints;

**RESPONSE:**

      Defendant objects to this request for production as being an invasion of privacy of the employee in question.

**REQUEST FOR PRODUCTION NO. 8:** Produce any and all documents, photographs, videotapes and other tangible things you may seek to introduce into evidence at the time of trial of this cause.

**RESPONSE:**

      This Defendant will supplement this request.

**REQUEST FOR PRODUCTION NO. 9:** Produce any store surveillance video tapes taken of the area where the alleged incident at issue in this lawsuit occurred.

**RESPONSE:**

None.

**REQUEST FOR PRODUCTION NO. 10:** Produce all personnel manual, training manuals, or instruction booklets which describe or refer to the care, custody, and control of the premises.

**RESPONSE:**

This Defendant will supplement this request.

**REQUEST FOR PRODUCTION NO. 11:** If Defendant's response to Request for Admission No. 8 is affirmative, please produce a copy of the investigator's report and curriculum vitae.

**RESPONSE:**

None.

# REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION  NO. 1:** Admit or deny that Defendant has been sued in its proper capacity.

**RESPONSE:**

　　Admit.

**REQUEST FOR ADMISSION  NO. 2:** Admit or deny that Defendant was a proximate cause of the incident at issue in this lawsuit.

**RESPONSE:**

　　Deny

**REQUEST FOR ADMISSION  NO. 3:** Admit or deny that Defendant was open to the public on May 30, 1999 and operating as a grocery store.

**RESPONSE:**

　　Admit

**REQUEST FOR ADMISSION  NO. 4:** Admit or deny that Plaintiff Alma Taitague was not contributorily negligent in connection with the incident at issue in this lawsuit.

**RESPONSE:**

　　Deny

**REQUEST FOR ADMISSION  NO. 5:** Admit or deny that Defendant's agent or employee had not made any examination or inspection of the area where the Plaintiff Alma Taitague fell prior to the incident at issue in this lawsuit.

**RESPONSE:**

　　Deny

**REQUEST FOR ADMISSION  NO. 6:** Admit or deny that Defendant had a surveillance camera in the area where the Plaintiff Alma Taitague fell at the time of the incident at issue in this lawsuit.

**RESPONSE:**

 Admit.

**REQUEST FOR ADMISSION NO. 7:** Admit or deny that Plaintiff Alma Taitague fell on a lime located in Defendant's produce section.

**RESPONSE:**

 Admit.

**REQUEST FOR ADMISSION NO. 8:** Admit or deny that Plaintiff Alma Taitague suffered personal injuries as a result of said slip and fall.

**RESPONSE:**

 Deny

**REQUEST FOR ADMISSION NO. 8:** Admit or deny that Defendant has hired a private investigator to assist in its defense of this claim.

**RESPONSE:**

 Deny.

# REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1:

Produce any store surveillance videotapes taken on June 2, 2000 of the area where the alleged incident at issue in this lawsuit occurred.

## RESPONSE:

Defendant objects to this request for production as being irrelevant and overly broad in that it does not concern the date of Plaintiff Alma Taitagure's alleged fall.

The videotapes used in all Albertson's stores are reused every 60 days, unless a request is made within that time frame to preserve the tape in question. Therefore, Defendant is unable to produce the videotape which recorded the scene where Plaintiff Alma Taitague fell on May 30, 1999.

## REQUEST FOR PRODUCTION NO. 2:

Produce any store surveillance videotapes taken on June 16, 2000 of the area where the alleged incident at issue in this lawsuit occurred.

## RESPONSE:

Defendant objects to this request for production as being irrelevant and overly broad in that it does not concern the date of Plaintiff Alma Taitagure's alleged fall.

The videotapes used in all Albertson's stores are reused every 60 days, unless a request is made within that time frame to preserve the tape in question. Therefore, Defendant is unable to produce the videotape which recorded the scene where Plaintiff Alma Taitague fell on May 30, 1999.

## REQUEST FOR PRODUCTION NO. 3:

Produce any store surveillance videotapes taken on September 5, 2000 of the area where the alleged incident at issue in this lawsuit occurred.

## RESPONSE:

Defendant objects to this request for production as being irrelevant and overly broad in that it does not concern the date of Plaintiff Alma Taitagure's alleged fall.

The videotapes used in all Albertson's stores are reused every 60 days, unless a request is made within that time frame to preserve the tape in question. Therefore, Defendant is unable to produce the videotape which recorded the scene where Plaintiff Alma Taitague fell on May 30, 1999.

MAY 31 '99 12:25 FR GATES MCDONALD BOISE 208 333 1343 TO MAITLAND,FL ALBS P.12

# *Confidential* Customer Incident Report

 JRK

## SLIP & FALL

Claim Number: **GLI999TX001178**
Unit Number: **4084**
Phone: **(956) 542 -6227**
Address **3355 BOCA CHICA BLVD**
**BROWNSVILLE        TX    78520**
Store Director: **SAL GONZALEZ**

Incident Date: **05/30/1999**
Local Incident Time: **13:45**
ARMIS Entry Date: **05/31/1999**
ARMIS Entry Time: **08:17**
Investigating Employee: **RENE CORTEZ**

## Claimant Information

Social Security #: **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**        Employer: **Works for Atty**        Occupation:
Name: ~~EDDA~~ **ALMA      TAITAQUE**        Sex: **F**
Address: **1300 SQUAW VALLEY DR    # B**        Height:        Weight:
**BROWNSVILLE        TX    78520**        Birth Date:
Phone Numbers: (H) **956-350-4127**  (W) **956-541-4235**        Age/Estimated Age: **0**
Is the customer recognized as a frequent patron? **U**        Spouse's name (if married): **Bill**
Is the customer a minor? **N**        Parent(s) or Guardian(s):

## Incident Details

Where on premises did the incident occur? **SFLR-Produce**
  Name of unit's CAM Director
  Name of parking lot service:
Weather conditions: **Clear, dry**        Did the customer complain of inadequate lighting? **N**
Description of incident: **S/F KEY LIME/FELL ON HAND/ SWOLLEN L/ANKLE**

Claimant's version of incident **SAME**
Condensed description of the accident: **S/F KEY LIME/ SWOLLEN ANKLE**
Does the unit agree with the claimant's version? **U**
  Explain why claimant's version is questioned:

Type of footgear worn: **Sandals/flip flops/birkenstocks**
Was foreign substance stuck to footgear? **N**
  Describe foreign substance on footgear:
Did customer allege any debris/foreign substance in area? **Y**
  Describe alleged debris/foreign substance: **KEY LIME**
  Did store's investigation verify existance of alleged debris/foreign substance? **N**
Source of debris/foreign substance:
  If from defective container, describe:
  If defective container involved, has unit preserved it as evidence?
How much of an area did it cover?
How long had the debris/foreign substance been there?
How did the unit determine the length of time?
Is the janitorial service involved? **N**        Name of janitorial company:
Was any employee aware of the condition prior to the incident?
  Name of employee aware:
  Reason for awareness:
How often is the area inspected? **HRLY**
How long before the incident was the area inspected? **15 MIN**        Was it clear at that time? **Y**
  Employee who did last inspection: **UNK**
Who inspected the area after the incident? **RENE CORTEZ**
  Did the substance appear slipped on?
Did the incident occur on non-skid flooring? **N**
Were caution cones out? **N**  Number of cones:      Cone distance:
Were mats out? **N**      Number of mats:      Mat distance:
Is there any defective equipment to be repaired or replaced? **N**  If so, describe:
Are any photos, videotape, or paperwork being forwarded? **PHOTOS/ VIDEO(?)** Blue Slip & Fall form? **N**
Should the customer be contacted? **Y**      If no, explain:

**FAXED MAY 31 1999**

## Injury Details  Will the customer require medical attention? **U**
Name of hospital if taken by ambulance:
What part of body was injured? **ankle-left**        Describe the type of injury: **strain muscle or ligament-other**

## First Witness Information
Name:
Address:

Phone number:
Category of witness:
Witness comments:

## Second Witness Information
Name:
Address:

Phone number:
Category of witness:
Witness comments:

Date of unit's first notice of incident: **05/30/1999**        Operator ID: **GORMJCS**
Time of unit's first notice of incident: **13:45**        Adjusting Office: **500**



Xerox

70% ← → 141%



CVISPDF - www.fasiso.com

