27

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 3 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ALMA TAITAGUE and BILL TAITAGUE | § § § | |
| VS. | § § | CIVIL ACTION NO. B-00-099 |
| ALBERTSON'S, INC. | § § § | |

## JOINT PRETRIAL ORDER

COMES NOW **ALMA TAITAGUE** and **BILL TAITAGUE**, Plaintiffs, and

**ALBERTSON'S, INC.**, Defendant, and file this their Joint Pretrial Order.

1. **APPEARANCE OF COUNSEL:**

   **Plaintiffs:**

   Alma Taitague
   Bill Taitague

   **Plaintiffs' counsel:**

   Anthony P. Troiani
   LAW OFFICE OF ANTHONY TROIANI
   700 Paredes Avenue, Suite 107
   Brownsville, Texas 78521
   (956) 541-4235 Tel.
   (956) 541-9174 Fax.
   State Bar No.  00795914
   Fed. I.D. No.  20607

   **Defendant:**

   Albertson's, Inc.

**Defendant's counsel:**

Douglas E. Chaves
CHAVES, GONZALES & HOBLIT, L.L.P.
2000 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78470
(361) 888-9392 Tel.
(361) 888-9187 Fax.
State Bar No.  04161400
Fed. I.D. No. 1895

## 2.   STATEMENT OF THE CASE:

This is a lawsuit brought by Alma Taitague and Bill Taitague against Albertson's,

Inc.  This is a slip and fall case in the produce department of the Albertson's store located

on Boca Chica Boulevard in Brownsville, Texas.  This incident occurred on May 30, 1999.

Plaintiffs' further allege that Plaintiff Alma Taitague was shopping for produce when she

slipped and fell on a key lime located on Defendant's floor, which resulted in a twisted

ankle and damage to her left shoulder.

## 3.   JURISDICTION:

Briefly specify the jurisdiction of the subject matter and the parties.  If there is an
unresolved jurisdictional question, state it.

The action is a civil action of which this Court has jurisdiction under Title 28 U.S.C.
Section 1332.

## 4.   MOTIONS:

List pending motions.

**Plaintiffs' Pending Motions**

A.     Plaintiffs' Motion in Limine;
B.     Plaintiffs' Motion to Compel and for Sanctions;
C.     Plaintiffs' Motion for Spoliation Instruction to Jury; and

**Defendant's Pending Motions**

A.    Defendant's Motion in Limine
B.    Defendant's Motion to Withdraw or Amend Admissions

5.    **CONTENTIONS OF THE PARTIES:**

State concisely in separate paragraphs each party's claim.

A.    **Plaintiffs' Contentions**

1.    Plaintiffs contend that Defendant failed to inspect the produce department for dangerous conditions.

2.    Plaintiffs contend that the Defendant failed to warn Plaintiff of the unreasonably dangerous condition, to wit, a key lime on the produce department floor.

3.    Plaintiffs contend that Defendant failed to properly maintain its produce department to prevent, eliminate or remove debris from the area.

4.    Plaintiffs contend that Defendant acted willfully or with reckless indifference to the rights of Plaintiffs when it disregarded the maintenance of the floor when they knew or should have known of the floor's condition.

5.    Plaintiffs contend that Defendant's omissions were the proximate cause of Plaintiffs' injuries.

6.    Plaintiffs contend that due to Defendant's omissions Plaintiff Bill Taitague was denied the care, affection and love of his wife Alma Taitague.

E.    **Defendant's Contentions**

1.    Defendant contends that it did not fail to inspect the produce department for dangerous conditions.

2.    Defendant contends that it did not fail to warn Defendant of the alleged unreasonably dangerous condition, to wit, key lime on produce department floor.

3.    Defendant contends that it did not fail to properly maintain its produce department to prevent, eliminate or remove debris from the area.

4.    Defendant contends that it did not proximately cause Plaintiff's injuries.

5.    Defendant contends that Bill Taitague was not denied the care, affection and love of his wife, due to Defendant's omissions.

6.    Albertson's was not negligent in its maintenance of its store.

7.    Albertson's did not have actual or constructive knowledge of any unreasonable risk or harm on the day in question.

8.    Albertson's used reasonable care to reduce or eliminate any unreasonable risks of harm.

9.    Plaintiff ALMA T. TAITAGUE'S injuries are preexisting.

10.   The Defendant did not know of any dangerous condition, specifically that a key lime was on the floor so long that the Albertson's should have discovered and corrected the fact that the key lime may have been on the floor.

11.   Plaintiff was contributory negligent, to wit: failed to keep a proper lookout.

## 6.   ADMISSIONS OF FACT:

List all facts that require no proof.

(1)   That Alma Taitague and Bill Taitague, Plaintiffs were business invitees on the premises of Albertson's Inc. in Brownsville, Texas.

(2)   Defendant Albertson's Inc. is a corporation, registered under the laws of Delaware, and is registered to do business in Texas.

*(Defendant intends to seek leave of court to withdraw its admissions, to which, Plaintiffs Object.)*

(3)   That Alma Taitague fell on a key lime in the produce section of Albertson's Inc. in Brownsville, Texas.  This Admission of fact is subject to the Court's ruling on Defendant's Motion to Withdraw or Amend Admissions.

(4)   That Defendant Albertson's Inc., had a surveillance camera in the area where Alma Taitague fell at the time of the incident at issue in this lawsuit. This Admission of fact is subject to the Court's ruling on Defendant's Motion to Withdraw or Amend Admissions.

## 7.   CONTESTED ISSUES OF FACT:

List all material facts in controversy.

1.    Whether Albertson's failed to maintain its floor in a reasonably safe condition.

2.    Whether or not Albertson's was negligent in failing to warn Alma T. Taitague of the key lime on the floor.

3.    Whether or not Albertson's failed to correct the condition which created the key lime to be on the floor.

4.    Whether or not Albertson's failed to warn Alma T. Taitague of any dangerous condition on the premises.

5.    Whether or not Albertson's failed to maintain the premises in a reasonably safe condition.

6.    Whether or not Alma T. Taitague's injuries were proximately caused by the alleged incident.

7.    Whether or not Bill Taitague has sustained a serious loss of affection, solace, comfort, companionship, society, assistance, and sexual relationship that he previously received from his spouse before the accident in question.

8.    What are the out-of-pocket losses Plaintiffs have incurred, and the amount of Plaintiffs have incurred, and the amount of Plaintiffs' alleged damages in general.

## 8.   AGREED PROPOSITIONS OF LAW:

List the legal propositions that are not in dispute.

The parties agree that the Court has jurisdiction to hear this case; that the state law of premises liability, business invitee and loss of consortium will control; that the burden

of proof is on the Plaintiff to prove her case by a preponderance of the evidence; that the Plaintiff must prove that Alberton's, Inc. was negligent and that such negligence proximately caused the injuries and damages sustained by Plaintiff.

"Negligence": means failure to use ordinary care, that is failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary Care": means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate Cause": means that cause which, in a natural and continuous sequence, produce an event, and without which cause such event would not have occurred. In order to have a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

## 9.    CONTESTED PROPOSITIONS OF LAW:

State briefly the unresolved questions of law, with authorities to support each.

1. Whether or not with regard to Albertson's, Inc., the term "negligence" has the following meaning.

   a. That at the time of the occurrence in question there was a condition in the produce department which presented an unreasonable risk of harm to Alma Taitague;

   b. That prior to the occurrence in question Albertson's, Inc., knew or should have known by the exercise of ordinary care about said condition; and

   c. That Albertson's, Inc. did not exercise reasonable care to reduce or eliminate the risk.

2.      Whether the Plaintiff is entitled to a jury instruction on spoliation that the evidence destroyed would have been favorable to the Plaintiff and unfavorable to the Defendant. *Trevino v. Ortega,* 969 S.W.2d 950, 960 (Tex. 1998) *Knightsbridge Marketing Services, Inc. v. Promociones y Proyectos, S.A.,* 728 F.2d 572 (1ˢᵗ Cir. 1984); *ACWOO International Steel Corp. v. M/V Hosei Maru,* 736 F.Supp. 1452 (E.D. Mich. 1989); *Natural Gas Pipeline Company of America v. Odom Offshore Surveys,* 697 F.Supp. 921 (E.D. La. 1988); *Arvin-Edison Water Storage District v. Hodel,* 610 F.Supp. 1206 (D.D.C. 1985).

## 10.  EXHIBITS:

1.      Plaintiffs' proposed exhibit list is attached as Exhibit "D".
2.      See Defendant's Proposed Exhibit List.

## 11.  WITNESSES:

1.      List the names and addresses of witnesses who may be called with a brief statement of the nature of their testimony. Include the qualifications of expert witnesses; these will be used to qualify the expert at trial. If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

### Plaintiffs' Witnesses

1.      Alma Taitague
1300 Squaw Valley Drive, Unit B
Brownsville, Texas 78520 is the Plaintiff in this case.

2.      Bill Taitague
1300 Squaw Valley Drive, Unit B
Brownsville, Texas 78520 is the Plaintiff in this case.

3.      Sal Gonzalez
Store Director
Albertson's Inc.

3555 Boca Chica Blvd.
Brownsville, Texas 78521
Sal Gonzalez will testify as to store policies and procedures.

4.  Rene Cortez
    Store Manager
    Albertson's Inc.
    3555 Boca Chica Blvd.
    Brownsville, Texas 78521
    Rene Cortez will testify as to store procedures and the investigation
    of the incident in question.

5.  Hector Betancourt
    Former Albertson's employee
    Address unknown
    Was the first Albertson's employee at the scene of the incident.

6.  Enid Pryor
    Albertson's Risk Management
    2301 Lucien Way, Suite 140
    Maitland, Florida 32751-7011
    (407) 659-6412
    Enid Pryor will testify as to Albertson's policies and procedures
    concerning investigation photographs and surveillance videotapes.

7.  Joe Leal
    Albertson's Inc.
    1309 E. Red River
    Victoria, Texas 77901
    Former manager of the Brownsville Albertson's produce department.

8.  Bob Odem
    Albertson's Inc.
    Safety Director
    121 Inter Park Blvd., Ste. 300
    San Antonio, Texas 78216

9.  A. Gonzalez
    P. O. Box 1262
    Los Fresnos, Texas 78566
    (956) 983-9349 (pager)
    Investigator retained by Plaintiffs to review accident scene.

The following are the medical providers who treated Alma Taitague as a result of
the incident forming the basis of this suit.

10.  Dr. Enrique Griego
1002 W. Sam Houston, Ste. 4
Pharr, Texas 78577
(956) 787-8855
*Dates of Service: 06/01/99 to Present - Treating physician for high
blood pressure, allergies, bronchitis, left shoulder and left ankle injury.*

11.  Sam Houston X-Rays
1002 W. Sam Houston
Pharr, Texas 78577
(956) 781-5350
*Dates of Service: 06/01/99 - Facility who took the x-rays of Plaintiff
Alma Taitague's left ankle and left shoulder area after the incident.
They will testify as to her medical condition, the care and treatment.*

12.  Dr. Allan Kapilivsky
711 Nolana, Suite 204
McAllen, Texas 78501
(956) 972-0767
*Dates of Service: 06/07/99 - Radiologist who interpreted the x-rays of
Plaintiff Alma Taitague's left ankle and left shoulder area.*

13.  Industrial Mobility Rehabilitation Center
44 W. Jefferson, Ste. A
Brownsville, Texas 78520
(956) 504-0810
*Dates of Service: 06/10/99 to 07/09/99 - Facility where Plaintiff Alma
Taitague underwent physical therapy after the incident in question.*

14.  Rio Grande Valley Imaging Center
501-B Ed Carey Drive
Harlingen, Texas 78550
(956) 440-8900
*Dates of Service: 07/22/99 - Facility where Plaintiff Alma Taitague's
MRI was performed.*

15.  Dr. Dee L. Martinez
904 N. Ewing
Dallas, Texas 75203
(214) 941-8901
*Dates of Service: 07/22/99 - Radiologist who interpreted the MRI
taken of Plaintiff Alma Taitague's left shoulder area.*

16.  Brownsville Medical Center
1040 W. Jefferson
Brownsville, Texas 78520

(956) 544-1400
*Dates of Service: 12/07/99 & 02/28/00 - Hospital where various x-rays were taken and the arthrogram was performed.*

17. Dr. James Key
800 W. Jefferson, Suite 200
Brownsville, Texas 78520
(956) 982-8822
*Dates of Service: 08/05/99 to 01/19/00 - Board Certified Orthopedic surgeon who treated Mrs. Taitague for her left shoulder injury. Dr. Key referred Plaintiff to Dr. Kujawa.*

18. Dr. Ples L. Kujawa
12709 Toepperwein Road, Suite 101
San Antonio, Texas 78233
(210) 477-5151
*Dates of Service: 01/28/00 to present - Dr. Kujawa is an orthopedic surgeon who treated and performed the outpatient arthroscopy surgery on Plaintiff Alma Taitague's left shoulder.*

19. Northeast Methodist Ambulatory Surgery Center
12702 IH-35 North
San Antonio, Texas 78233
(800)223-9899
*Dates of Service: 03/09/00 - Outpatient surgical center where the arthroscopy surgery on Plaintiff Alma Taitague's left shoulder was performed.*

20. Dr. Gary Keener
Star Anesthesia, P.A.
P. O. Box 659
San Antonio, Texas 78293-0659
(210) 375-7780
*Dates of Service: 03/09/00 - Dr. Keener was the anesthesiologist who administered the anesthesia and/or medications during the arthroscopy of Plaintiff Alma Taitague's left shoulder.*

21. Dr. Anant K. Utturkar
2390 Central Blvd., Suite Y
Brownsville, Texas 78520-8717
(800) 203-4715
*Dates of Service: 12/07/99 - Radiologist who performed the arthrogram on Plaintiff Alma Taitague's left shoulder.*

22. Dr. William McKinney
1313 Alton Gloor Blvd., Suite C

Brownsville, Texas 78521
(888) 345-6730
*Dates of Service: 02/28/00 - Radiologist who interpreted and/or took chest x-rays of Plaintiff Alma Taitague for preoperative purposes.*

23. Dr. L. Stacy Mitchell
Southern Orthopaedics
4302 S. Sugar Road, Suite 106
Edinburg, Texas 78539
(956) 383-5550
*Dates of Service: 01/19/00 - Doctor seen for a second opinion of Plaintiff Alma Taitague's left shoulder.*

24. OrthoLogic
1275 West Washington Street
Tempe, Arizona 85281-1210
(800) 937-5520
*Dates of Service: 03/10/00 - Facility who provided the physical therapy equipment after surgery to left shoulder.*

25. EBI Medical Systems, Inc.
100 Interspace Parkway
Parsippany, New Jersey 07054-1079
(800) 526-2579
*Dates of Service: 03/09/00 - Facility who provided cold pack materials after the surgery to left shoulder.*

26. Brownsville Therapy Associates
800 W. Jefferson, Suite 200
Brownsville, Texas 78520
(956) 982-6982
*Dates of Service: 08/10/99 - Facility where Plaintiff Alma Taitague underwent physical therapy prescribed by Dr. Key.*

## Defendant's Witnesses

1. ALMA T. TAITAGUE
1300 Squale Valley Drive, Unit B
Brownsville, Texas 78520
ALMA T. TAITAGUE is Plaintiff in this case.

2. BILL TAITAGUE
1300 Squale Valley Drive, Unit B
Brownsville, Texas 78520
BILL TAITAGUE is Plainiff in this case.

3.     SAL GONZALEZ
       Store Manager
       ALBERTSON'S
       3555 Boca Chica Blvd.
       Brownsville, Texas  78521
       SAL GONZALEZ will testify as to store procedures.

4.     RENE CORTEZ
       Store Manager
       ALBERTSON'S
       3555 Boca Chica Blvd.
       Brownsville, Texas  78521
       RENE CORTEZ will testify as to Albertson's procedures and the
       investigation of the incident in question.

The witness' mentioned below are Alma Taitague's medical providers and
will testify as to their care of Mrs. Taitague.

5.     DR. ENRIQUE GRIEGO
       And/or his custodian of Records
       1002 W. Sam Houston, Suite 4
       Pharr, Texas  78577

6.     SAM HOUSTON X-RAYS
       And/or its Custodian of Records
       1002 W. Sam Houston
       Pharr, Texas  78577

7.     DR. ALLAN KAPILIVSKY
       711 Nolana, Suite 204
       McAllen, Texas 78501
       (956) 972-0767

8.     INDUSTRIAL MOBILITY REHABILITATION CENTER
       And/or its Custodian of Records
       44 W. Jefferson, Suite A
       Brownsville, Texas  78520

9.     RIO GRANDE VALLEY IMAGING CENTER
       And/or its Custodian of Records
       501-B Ed Carey Drive
       Harlingen, Texas  78550

10.    DR. DEE L. MARTINEZ
       And/or his custodian of Records
       904 N. Ewing

Dallas, Texas  75203

11.   BROWNSVILLE MEDICAL CENTER
      And/or its Custodian of Records
      1040 W. Jefferson
      Brownsville, Texas  78520

12.   ORTHOLOGIC
      And/or its Custodian of Records
      1275 W. Washington
      Tempe, Arizona 85281

13.   EBI MEDICAL SYSTEMS, INC.
      And/or its Custodian of Records
      100 Interspace Parkway
      Parsippany, N.J.  075054

14.   VALLEY BAPTIST MEDICAL CENTER
      And/or Custodian of Records
      2101 Pease
      Harlingen, Texas  78520

15.   SUNRISE CHIROPRACTIC
      And/or Custodian of Records
      2310 N. Expressway
      Brownsville, Texas  78520

16.   DR. JAMES KEY
      And/or his Custodian of Records
      800 West Jefferson, Suite 200
      Brownsville, Texas  78520

17.   DR. PLES KUJAWA
      And/or Custodian of Records
      8800 Village Drive, Suite 101
      San Antonio, Texas  78217

18.   NORTHEAST METHODIST AMBULATORY SURGERY CENTER
      And/or Custodian of Records
      12701 IH-35 North
      San Antonio, Texas 78233

19.   DR. GARY KEENER
      And/or Custodian of Records
      Star Anesthesia
      P. O. Box 659

San Antonio, Texas 78293

20. DR. ANANT K. UTTURKAR
And/or Custodian of Records
2390 Central Blvd., Suite Y
Brownsville, Texas 78520

21. DR. WILLIAM MCKINNEY
And/or Custodian Records
820 W. Price Road, Suite A
Brownsville, Texas 78521

22. DR. L. STACY MITCHELL
And/or Custodian of Records
Southern Orthopaedics
4302 S. Sugar Road, Suite 209
Edinburg, Texas 78539

23. COLUMBIA VALLEY REGIONAL MEDICAL CENTER
And/or Custodian of Records
100-A Alton Gloor Blvd.
Brownsville, Texas 78520

24. DR. RICARDO ADOBBATI
And/or Custodian of Records
1134 Lost Ebanos
Brownsville, Texas 78520

25. DR. CHARLES ZAVALA
And/Or Custodian of Records
840 W. Price
Brownsville, Texas 78520

26. DR. KIM COCKINS
And/Or Custodian of Records
100-B E. Alton
Brownsville, Texas 78520

27. DR. PAUL LENZ
And/Or Custodian of Records
2300 Central Blvd.
Brownsville, Texas 78520

28. JOE LEAL
Former Albertson's Produce Manager
Albertson's

1309 East Red River
Victoria, Texas 77901
Mr. Leal will testify as to policies and procedures in Produce
Department.

29.    BOB ODEM
Albertson's, Inc.
Safety Director
121 Inter Park Blvd., Suite 300
San Antonio, Texas 78216
Mr. Odem will testify as to Albertson's Safety policy and procedure.

30.    HECTOR BETANCOURT
Former Alberton's Employee
2945 Sandia
Brownsville, Texas
Mr. Betancourt will testify as to policies and procedures in Produce
Department and sweep sheets.

31.    DOUG MINIUTTI
Albertson's Produce Sales Manager
121 Inter Park Blvd.
Suite 300
San Antonio, Texas 78216
Mr. Miniutti will testify as to Policies and Procedures of Produce
Department.

## 12.    SETTLEMENT:

Plaintiff and Defendant would assert due to the change in defense counsel
and the late deposition scheduling in this matter, the parties have not been
able to mediate this case.

## 13.    TRIAL:

1.    Probable length of trial;

The trial of this cause is anticipated to last no more than two (2) days.

2.    Logistical problems, including availability of witnesses, out-of-state
people, bulky exhibits, and demonstrations.

Plaintiff anticipates calling Enid Pryor, an adjuster at Albertson's Risk

Management Department regarding the whereabouts of the video surveillance tapes taken on May 30, 2001. Ms. Pryor is located in Florida.

**14.    ATTACHMENTS:**

Include these required attachments:

1.    Plaintiff's Attachments:

    A.    Plaintiffs' Proposed questions for the voir dire examination.

    B.    Plaintiffs' Proposed jury charge, including instructions, definitions, and special interrogatories, with authority (subject to revision).

    C.    Plaintiffs' Motion and Memorandum in support of a spoliation instruction.

    D.    Plaintiffs' proposed exhibit list.

2.    Defendant's Attachments:

    A.    Albertson's proposed Voir Dire Questions

    B.    Albertson's proposed Jury Charge

DATE:_____, 2001.

_____
UNITED STATES DISTRICT JUDGE

APPROVED:

DATE:____4/23____, 2001.

_____
ANTHONY P. TROIANI

Attorney-in-Charge for Plaintiffs

DATE:_____, 2001.

_____
DOUGLAS E. CHAVES

Attorney-in-Charge for Defendant

Case 1:00-cv-00099   Document 27   Filed in TXSD on 04/23/2001   Page 18 of 91

**APPROVED:**

DATE: _4/23_, 2001.

ANTHONY P. TROIANI

Attorney-in-Charge for Plaintiffs

DATE: _4/23_, 2001.

DOUGLAS E. CHAVES

Attorney-in-Charge for Defendant

# JOINT PRE-TRIAL ORDER EXHIBIT "A"

ClibPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ALMA TAITAGUE and BILL TAITAGUE §
§
§
VS. § CIVIL ACTION NO. B-00-099
§
§
ALBERTSON'S, INC. §

## PLAINTIFFS' REQUESTED VOIR DIRE EXAMINATION
## OF THE JURY PANEL

The Plaintiffs submit the following proposed questions for voir dire examination and

ask that they be submitted to the jury panel.

1.    Does anyone on the panel not read, write and/or speak the English language?

2.    Does anyone on the panel take care of small children?

3.    Is anyone on the panel enrolled in school?

4.    Does anyone on the panel know anyone who works for or is associated with the

      lawfirm of Chaves, Gonzalez and Hoblitt out of Corpus Chrisiti: that includes lawyers

      or any support staff?  If so, will affect your impartiality?

5.    Does anyone on the panel know any of the witnesses who are expected to give

      testimony in this trial.  They are as follows:

      a.    Alma Taitague;

      b.    Bill Taitague;

      c.    Rene Cortez;

      d.    Sal Gonzalez;

CMJPDF - www.texiss.com

      e.      Hector Betancourt

      f.       Dr. Ples Kujawa, M.D. and

      g.      Enid Pryor

      h.      Martin Longoria with Industrial Mobility

      If so, will it affect your impartiality?

6.      Does anyone here support or sympathize with Citizens Against Lawsuit Abuse or any tort reform organization?

7.      Who on the panel would be prejudice toward Alma Taitague because she is employed by her attorney, Anthony Troiani?

8.      Who on the panel would not be able to award one dollar or any amount of money to someone because of a civil lawsuit?

9.      Who on the panel does not feel people should sue to recover money for personal injuries?

10.     Who on the panel has been on a civil jury before?

11.     What type of case was it?

12.     Was a verdict reached?

13.     Who on the panel has sat on a criminal jury before?

14.     What type of case was it?

15.     Was a verdict reached?

16.     Has anyone or a family member ever been a defendant in a lawsuit or had a claim made against them?

17.     If so, what type of claim.?

18.     Would that fact prejudice you against Alma or Bill Taitague?

19.     How much do you believe your own pain and suffering is worth?

20.     Is anyone on the panel unwilling to award a plaintiff at least $75,000.00 for her pain and suffering no matter what the facts are?

21.     Who on the panel could not award a plaintiff anything for a slip and fall case?

22.     Who on the panel has been convicted of a felony in this state or any other state?

23.     Who on the panel does not believe people should be compensated for injuries caused by the acts of others?

24.     Who on the panel, if anyone, shops at Albertson's in Brownsville, Texas.

25.     Who on the panel could not award damages for pain and suffering?

Respectfully submitted,

Anthony P. Troiani
State Bar No.: 00795914
Federal No. 20607
Law Office of Anthony Troiani
700 Paredes Avenue, Suite 107
Brownsville, Texas 78521
(956) 541-4235 Tel.
(956) 541-9174 Fax.

ATTORNEY-IN-CHARGE

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of April, 2001, a true and correct copy of the foregoing Plaintiffs' Requested Voir Dire Examination of the Jury Panel has been forwarded to defense counsel of record, via certified mail, return receipt requested, hand-delivery and/or facsimile transmission:

Mr. Douglas E. Chaves
CHAVES, GONZALES & HOBLIT, L.L.P.
2000 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78470

ANTHONY P. TROIANI

# JOINT PRE-TRIAL ORDER EXHIBIT "B"

CVisPDF - www.fesko.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ALMA TAITAGUE and BILL TAITAGUE    §
                                   §
                                   §
VS.                                §        CIVIL ACTION NO. B-00-099
                                   §
                                   §
ALBERTSON'S, INC.                  §

## PLAINTIFFS' PROPOSED CHARGE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, ALMA TAITAGUE and BILL TAITAGUE, Plaintiffs in the above-entitled and numbered cause, and before presentation of the Charge to the Jury, file the attached Proposed Charge and pray that the Charge be included in the Court's Charge to the Jury.

Respectfully submitted,

Anthony P. Troiani
State Bar No.: 00795914
Federal No. 20607
Law Office of Anthony Troiani
700 Paredes Avenue, Suite 107
Brownsville, Texas 78521
(956) 541-4235 Tel.
(956) 541-9174 Fax.

ATTORNEY-IN-CHARGE

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of April, 2001, a true and correct copy of the foregoing Plaintiffs' Proposed Charge has been forwarded to defense counsel of record, via certified mail, return receipt requested, hand-delivery and/or facsimile transmission:

Mr. Douglas E. Chaves
CHAVES, GONZALES & HOBLIT, L.L.P.
2000 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78470

ANTHONY P. TROIANI

## REQUESTED CHARGE NO.  1

## DEFINITION NO.  1

"Alma Taitague" means the Plaintiff, Alma Taitague.


## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the

presentation of the charge to the jury that the above and foregoing Proposed Charge was

presented to the Court for inclusion in the Charge to the Jury and the same was:

_____    included in the Court's charge.

_____    refused.

_____    modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.


                                        _____
                                        JUDGE PRESIDING

## REQUESTED CHARGE NO. 2

## DEFINITION NO. 2

"Bill Taitague" means the Plaintiff, Bill Taitague.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the

presentation of the charge to the jury that the above and foregoing Proposed Charge was

presented to the Court for inclusion in the Charge to the Jury and the same was:

_____        included in the Court's charge.

_____        refused.

_____        modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 3

## DEFINITION NO. 3

"Albertson's" means the Defendant, Albertson's, Inc.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the

presentation of the charge to the jury that the above and foregoing Proposed Charge was

presented to the Court for inclusion in the Charge to the Jury and the same was:

_____     included in the Court's charge.

_____     refused.

_____     modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.


_____

JUDGE PRESIDING

## REQUESTED CHARGE NO. 4

## DEFINITION NO. 4

"NEGLIGENCE" means failure to use ordinary care, that this, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person or ordinary care would not have done under the same or similar circumstances.

"NEGLIGENCE" by an owner or occupier of a premises is the failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the occupier knows about or in the exercise of ordinary care should know about.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____   included in the Court's charge.

_____   refused.

_____   modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.


_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 5

## DEFINITION NO. 5

"ORDINARY CARE" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"ORDINARY CARE" when used with respect to an owner or occupier of a premises, means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____ included in the Court's charge.

_____ refused.

_____ modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 6

## DEFINITION NO. 6

"PROXIMATE CAUSE" means that caused which, in a natural and continuous sequence, produces an event and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using *ordinary care* would have foreseen that the event or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____    included in the Court's charge.

_____    refused.

_____    modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 7

## INSTRUCTION NO. 1

An owner or operator of a business who directly or impliedly invites others to enter for some purpose of interest or advantage to the store owner or operator owes to these persons a duty to exercise reasonable or ordinary care to have his store in a reasonably safe condition for use by them.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____   included in the Court's charge.

_____   refused.

_____   modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 8

## INSTRUCTION NO. 2

The owner or operator of a store is under a duty to anticipate and guard against hazards or dangers that could reasonably be foreseen or anticipated.  It is the owner's or operator's duty to make proper inspections to see that the place is in proper condition to avoid injury.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____    included in the Court's charge.

_____    refused.

_____    modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.


_____
JUDGE PRESIDING

**REQUESTED CHARGE NO.  9**

**INSTRUCTION NO.  3**

A business invitee has the right to presume that the premises were kept in a safe condition for his or her own use, and is under no obligation to search out defects.  An owner or occupant of the store violates his duty to an invitee when he negligently allows conditions to exist on the property that imperil the safety of persons on the premises, and for the violation, he is responsible in damages to the injured person.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____    included in the Court's charge.

_____    refused.

_____    modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO.  10

## INSTRUCTION NO.  4

If the Plaintiff has proven her claim against the Defendant by a preponderance of the evidence, you must determine the damages to which the Plaintiff is entitled.  You should not interpret the fact that I have given instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task first to decide whether the Defendant is liable.  I am instructing you on damages only so that you will have guidance in the event you decide that the Defendant is liable and that the Plaintiff is entitled to recover money from the Defendant.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____    included in the Court's charge.

_____    refused.

_____    modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.


_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 11

## INSTRUCTION NO. 5

If you find that the Defendant is liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole-that is, to compensate the Plaintiff for the damage that the Plaintiff has suffered. Compensatory damages are not limited to expenses that the Plaintiff may have incurred because of her injury. If the Plaintiff wins, she is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that she has suffered because of the Defendant's conduct.

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less. [Damages are not allowed as a punishment and cannot be imposed or increased to penalize the Defendant.] You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered or that the Plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable

inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them

provided by a preponderance of the evidence:

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the

presentation of the charge to the jury that the above and foregoing Proposed Charge was

presented to the Court for inclusion in the Charge to the Jury and the same was:

_____      included in the Court's charge.

_____      refused.

_____      modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.


_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 12

## INSTRUCTION NO. 6

A.    Damages Accrued

If you find for the Plaintiff, she is entitled to recover an amount that will fairly compensate her for any damages she has suffered to date.

B.    Calculation of Future Damages

If you find that the Plaintiff is reasonably certain to suffer damages in the future from her injuries, then you should award her the amount you believe would fairly compensate her for such future damages. [In calculating future damages, you should consider the standard table of mortality as compiled by the United States Bureau of the Census, or other recognized mortality table.]

C.    Reduction of Future Damages to Present Value

An award of future damages necessarily requires that payment be made now for a loss that Plaintiff will not actually suffer until some future date.  If you should find that the Plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular factors:

1.    You should reduce any award by the amount of the expenses that the Plaintiff would have incurred in making those earnings.

2.    If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the Plaintiff could earn on the amount of the award if she made a relatively risk-free investment.  The

reason why you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the Plaintiff if she receives it today than if she received it in the future, when she would otherwise have earned it. It is more valuable because the Plaintiff can earn interest on it for the period of time between the date of the award and the date she would have earned the money. Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the Plaintiff can earn on that amount in the future.

If you make any award for future medical expenses, you should adjust or discount the award to present value in the same manner as with loss of future earnings.

However, you must not make any adjustment to present value for any damages you may award for future pain and suffering or future mental anguish.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____   included in the Court's charge.

_____   refused.

_____   modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 13

## INSTRUCTION NO. 7

You may award damages for any bodily injury that the Plaintiff sustained and any pain and suffering, disability, disfigurement, mental anguish, and/or loss of capacity for enjoyment of life that the Plaintiff experienced in the past or will experience in the future as a result of the bodily injury. No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced. You are not trying to determine value, but an amount that will fairly compensate the Plaintiff for the damages she has suffered. There is not exact standard for fixing the compensation to be awarded for these elements of damage. Any award that you make should be fair in the light of the evidence.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____   included in the Court's charge.

_____   refused.

_____   modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO.  14

## INSTRUCTION NO.  8

The reasonable [value][expense] of [hospitalization and] medical [and nursing] care and treatment that the Plaintiff will require because of her injuries which were caused by the Defendant's wrongful conduct.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____   included in the Court's charge.

_____   refused.

_____   modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 15

## INSTRUCTION NO. 9

Any past [and future] loss of spouse's services, comfort, society and attention that the Plaintiff has suffered [and will suffer] because of his spouse's injury.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____     included in the Court's charge.

_____     refused.

_____     modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____

JUDGE PRESIDING

## REQUESTED CHARGE NO. 16

## INSTRUCTION NO. 10

If you find that the Defendant is liable for the Plaintiff's injuries, you must award the Plaintiff the compensatory damages that she has proven.  You also may award punitive damages, if the Plaintiff has proved that the Defendant acted with malice or willfulness or with callous and reckless indifference to the safety or rights of others.  One acts willfully or with reckless indifference to the rights of others when he acts in disregard of a high and excessive degree of danger about which he knows or which would be apparent to a reasonable person in his condition.

If you determine that the Defendant's conduct was so shocking and offensive as to justify an award of punitive damages, you may exercise your discretion to award those damages, you may exercise your discretion to award those damages.  In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish a Defendant for shocking conduct, and to deter the Defendant and others from engaging in similar conduct in the future.  The law does not require you to award punitive damages, however, if you decide to award punitive damages, you must use sound reason in setting the amount of the damages.  The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party.  However, the amount can be as large as you believe necessary to fulfill the purpose of punitive damages.  You may consider the financial resources of the Defendant in fixing the amount of punitive damages.

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the

presentation of the charge to the jury that the above and foregoing Proposed Charge was

presented to the Court for inclusion in the Charge to the Jury and the same was:

_____     included in the Court's charge.

_____     refused.

_____     modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.


_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 17

## INSTRUCTION NO. 11

"Spoliation" applies not only to the situation where a Defendant has evidence which it fails to produce, but also to the situation where the Defendant has failed to retain evidence. In this case, Albertson's Inc., has failed to produce or to retain photographs and surveillance video tape taken of Alma Taitague on May 30, 1999.

Albertson's Inc., has either negligently or intentionally destroyed evidence and the jury should presume that the destroyed evidence was unfavorable to the spoliating party.

You the jury are to infer during your deliberations that this evidence would have been favorable to Alma Taitague and Bill Taitgaue's claims, and unfavorable to the defenses presented by Albertson's Inc.

A rebuttable presumption is hereby placed on the Defendant, Albertson's Inc., that it was in fact negligent in the manner in which it maintained its store and in warning invitees such as Alma Taitague and Bill Taitague of the dangerous and hazardous condition of its store.

Albertson's Inc., has the burden of disproving the presumed fact that it was negligent and failed to maintain its floors and to use ordinary care in the way a person of ordinary prudence would in under the same or similar circumstances.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____     included in the Court's charge.

_____     refused.

_____     modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____

JUDGE PRESIDING

## REQUESTED CHARGE NO. 18

## QUESTION NO. 1

Did the negligence, if any, of the persons named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

A. _____   Alma Taitague

B. _____   Albertson's, Inc.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____   included in the Court's charge.

_____   refused.

_____   modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 19

## QUESTION NO. 2

If, in answer to Question No. 1, you have found that the negligence of more than one of the persons named below proximately caused the occurrence, then answer Question No. 2. Otherwise, do not answer Question No. 2.

What percentage of the negligence that caused the occurrence do you find to be attributable to each of those found by you, in your answer to Question No. 1 to have been negligent?

The percentage you find must total 100 percent. The negligence attributable to a person named below is not necessarily measured by the number of acts or omissions found.

a.    Defendant        _____%

b.    Plaintiff        _____%

    Total        _____%

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____    included in the Court's charge.

_____    refused.

_____    modified and, as modified, included in the Court's Charge.

    Signed the _____ day of _____, 2001.

                        _____
                        JUDGE PRESIDING

## REQUESTED CHARGE NO. 20

## QUESTION NO. 3

What sum of money, if paid now in cash, would fairly and reasonably compensate Alma Taitague for her injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Answer in dollars and cents for damages, if any, that were sustained in the past and that in reasonable probability will be sustained in the future.

Element 1:   Medical care.                                $_____

Element 2:   Physical pain and mental anguish.   $_____

Element 3:   Physical impairment.                      $_____

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____   included in the Court's charge.

_____   refused.

_____   modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.


_____
JUDGE PRESIDING

## REQUESTED CHARGE NO. 21

## QUESTION NO. 4

What sum of money, if paid now in cash, would fairly and reasonably compensate Bill Taitague for injuries, if any, to his wife, Alma Taitague, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

a.     Loss household services.

"Household services" means the performance of household and domestic duties by a spouse to the marriage.

b.     Loss of consortium.

"Consortium" means the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love, and felicity necessary to a successful marriage.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Alma Taitague.

Answer in dollars and cents for damages, if any, that–

were sustained in the past;                                    Answer: _____

in reasonable probability will be sustained in the future.     Answer: _____

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was

presented to the Court for inclusion in the Charge to the Jury and the same was:

_____    included in the Court's charge.

_____    refused.

_____    modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.


_____
JUDGE PRESIDING

CVisPDF - www.fasiso.com

## REQUESTED CHARGE NO. 22

## QUESTION NO. 5

What sum of money, if any, should be assessed against Albertson's, Inc. and awarded to Alma Taitague as exemplary damages for the conduct found in response to Question No. _____ [*question authorizing potential recovery of punitive damages*]?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment. Exemplary damages includes punitive damages.

In determining the amount of exemplary damages you should consider evidence, if any, relating to:

a.   The nature of the wrong.

b.   The character of the conduct involved.

c.   The degree of culpability of the wrongdoer.

d.   The situation and sensibilities of the parties concerned.

e.   The extent to which such conduct offends a public sense of justice and propriety.

f.   The net worth of Albertson's, Inc.

Answer in dollars and cents, if any.

Answer: _____

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing Proposed Charge was presented to the Court for inclusion in the Charge to the Jury and the same was:

_____   included in the Court's charge.

_____    refused.

_____    modified and, as modified, included in the Court's Charge.

Signed the _____ day of _____, 2001.

_____
JUDGE PRESIDING

CutePDF - www.texis.com

## Plaintiffs' Proposed Jury Interrogatories

Plaintiffs' proposed jury interrogatories (subject to revision)

1.  Does the jury find by a preponderance of the evidence that Alberton's was negligent in the manner in which it displayed its produce (key limes) on May 30, 1999?

2.  Does the jury find by a preponderance of the evidence that Albertson's knew or should have known that the manner in which it kept its produce (key limes) posed an unreasonable risk of harm to Alma Taitague and other business invitees?

3.  Does the jury find by a preponderance of the evidence that Albertson's knew or reasonably should have known that the manner in which it displayed its produce (key limes) was dangerous?

4.  Does the jury find by a preponderance of the evidence that Albertson's, Inc. failed to exercise ordinary care to protect Alma Taitague from the danger by failing to warn her of the danger and by failing to display the produce (key limes) in a reasonably safe manner?

5.  Does the jury find beyond a preponderance of the evidence that Albertson's conduct in displaying its produce (key limes) was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, did Albertson's know or was it substantially certain that the result or a similar result would occur?

If the answer is yes to any of the above,

1.     Did the Alma Taitague suffer any physical or emotional injuries as a result of the Albertson's actions?

2.     State the amount of financial damages Alma Taitague sustained in the past including:

Reasonable medical bills

A.     Nursing

B.     Hospital

C.     Physical therapy

D.     Other actual financial loss, costs or bills

3.     State the amount of damages Alma Taitague sustained in the past for pain and suffering?

4.     If you find that any of Alma Taitague's injuries are permanent state the amount of the financial damages she will reasonably incur in the future including but not limited to:

Reasonable medical bills

A.     Nursing

B.     Hospital

C.     Physical therapy

5.     State the amount of damages for Alma Taitague's pain and suffering in the future.

6.     State the amount of damages sustained by Bill Taitague's loss of his spouse's services, comfort, society and attention that he has suffered because of Alma Taitague's injury.

7.    State the amount of damages that will be sustained by Bill Taitague in the future due to the loss of his spouse's services, comfort, society and attention that the Alma Taitague will suffer because of her injury.

CVisPDF – www.fsxtra.com

# JOINT PRE-TRIAL ORDER EXHIBIT "C"

CibiPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ALMA TAITAGUE and BILL TAITAGUE | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-099 |
| | § | |
| | § | |
| ALBERTSON'S, INC. | § | |

## PLAINTIFFS' MOTION FOR SPOLIATION INSTRUCTION
## AND MEMORANDUM IN SUPPORT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now come **ALMA TAITAGUE** and **BILL TAITAGUE**, Plaintiffs in the above-styled

and numbered cause, and files their motion for spoliation instruction and memorandum in

support and would show the Court as follows:

### I.
### Factual and Procedural
### Background

1.      This case evolves from an incident which occurred on May 30, 1999 at the

Albertson's grocery store located in Brownsville, Texas.  Plaintiffs Alma Taitague and Bill

Taitague allege that Defendant and its employees failed to inspect the store's produce

department, causing Alma Taitague to slip and fall and injure her left ankle and left

shoulder.  There are five known witnesses to the immediate facts surrounding this incident:

Plaintiff Alma Taitague, her husband, Plaintiff Bill Taitague, and Albertson's employees

Rene Cortez, Salvador Reyes Gonzalez, Jr. and Hector Betancourt.  The depositions of

1

the Plaintiffs, Rene Cortez, and Salvador Reyes Gonzalez, Jr. have been taken.  Hector Betancourt's whereabouts are unknown.  Plaintiffs are attempting to obtain photographs taken at the scene of the incident, the store's surveillance tapes (which pursuant to established store procedure and the testimony of the store's representative  should have been pulled and preserved), as well as the names, addresses and telephone numbers of the store personnel responsible for the care of the produce department.

2.      The parties disagree as to the length of time the key lime was on the floor, the number and frequency of the sweeps,  and the cause of Alma Taitague's fall.  Defendant admits that it had surveillance cameras which would have captured the incident. Additionally, Defendant's employees have testified that they are, pursuant to store procedure, required to pull the surveillance tapes and ship them to risk management. Defendant's store director, Salvador Reyes Gonzalez, Jr., testified that it is his policy to pull the surveillance tapes when an incident occurs. (Attached as **Exhibit "A"** pg. 74, ln. 18 - pg. 75, ln. 6. Gonzalez Depo.)  Defendant's key manager, Rene Cortez, testified that he took photographs of Alma Taitague, and the accident scene, and told the store director to pull the surveillance tapes after her fall. (Attached as **Exhibit "B"** pg. 23 ln. 21 - pg. 26 ln. 6, Cortez Depo.)

4.      Plaintiffs requested the photographs and surveillance tapes through written discovery and were told that there were no photographs taken of the Plaintiff and no surveillance tapes. (Attached as **Exhibit "C"** are Defendant's answers to interrogatories, request for admissions and first and second responses to requests for production regarding the surveillance tapes and the photographs.)  However, the incident report provided by

2

Alberton's Risk Management Department indicates that photos and possibly video tapes were sent to Risk Management. *See* **Exhibit "D."** The only photos produced to plaintiff by defense counsel were photos which were taken by Cindy Brady, an adjuster for the Littleton Group, when she interviewed Alma Taitague in her attorney's office. *See* **Exhibit "E."**

## II.
## Arguments and Authorities

5.     In spite of the fact that Plaintiffs have pinpointed the date, time and location of the incident, Defendant has failed or refused to provide the videotapes and photographs requested pursuant to the First and Second Request for Production. In fact, Defendant's Responses to Plaintiff's First Set of Interrogatories claim (contrary to sworn testimony of store management) that no photos were taken of Plaintiff. *See* **Exhibit "B"**. Moreover, Defendant claims that there were no surveillance videotapes on the day of the incident. Enid Pryor's, (an adjuster with Albertson's risk management department) responses to Plaintiff's Interrogatories and Requests for Production are in direct contrast to the deposition testimony of the stores management, Salvador Reyes Gonzalez, Jr. and Rene Cortez. This failure to produce evidence exclusively within the control of the Defendant brings the "adverse inference rule" into play. Under that rule, the absence of potential material evidence raises the presumption that it is unfavorable to the party who has possession and control of it. *Knightsbridge Marketing Services, Inc. v. Promociones y Proyectos, S.A.*, 728 F.2d 572 (1st Cir. 1984); *ACWOO International Steel Corp. v. M/V Hosei Maru*, 736 F.Supp. 1452 (E.D. Mich. 1989); *Natural Gas Pipeline Company of*

*America v. Odom Offshore Surveys*, 697 F.Supp. 921 (E.D. La. 1988); *Arvin-Edison Water Storage District v. Hodel*, 610 F.Supp. 1206 (D.D.C. 1985).

6.     The "adverse inference rule" applies not only to the situation where a Defendant has evidence which it fails produce, but also to the situation where the Defendant has failed to retain evidence.   *See Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 667 (Tex.App.-- Houston [1st Dist.] 1998, no pet.); *Whiteside v. Watson*, 12 S.W.3d 614, 622 (Tex.App.--Eastland 2000, vacated for settlement); *see also Clements v. Conard*, 21 S.W.3d 514, 523 (Tex.App.---Amarillo 2000, pet. denied); *In re Dynamic Health, Inc.*, 32 S.W.3d 876, 885 (Tex.App.--Texarkana 2000, mand. filed). Here, Defendant caused its personnel to fail to preserve and produce the videotape and photos taken on the day of the slip and fall accident.  The failure of a defendant to retain evidence so that it can be produced to the Plaintiff entitles the plaintiff to an inference that the evidence would have supported her case. *Stender v. Luck Stores, Inc.*, 803 F.Supp. 259 (N.D. Cal. 1992) (failure to retain personnel and employment records - employment discrimination case).

7.     Moreover, it is well settled that the party in the best position to present requisite evidence bears the burden of proof as to what happened to the evidence.  *United States v. Continental Insurance Co.*, 776 F. 2d 962 (11th Cir. 1985); *Nader v. Allegheny Airlines*, 512 F.2d 527 (D.C. Cir. 1975); *International Harvester Co. v. Ruckelshaus*, 478 F.2d 615 (D.C. Cir. 1973).

8.     The inference of adverse evidence employed by the federal courts is similar to the rebuttable presumption discussed in the Texas case of *Trevino v. Ortega*, 969 S.W.2d 950, 960 (Tex. 1998).  In *Trevino*, Justice Baker outlined in his concurrence the remedies

4

available for dealing with destroyed evidence and the reasons for the remedies.

9.     The purpose of spoliation and/or adverse inference remedies is twofold: to punish negligent or intentional conduct and to deter spoliation of evidence in the future.  In *Trevino*, Justice Baker explained that Texas rules of civil procedure allow trial courts to sanction parties whenever a party abuses the discovery process and that spoliation of evidence is an abuse of that process. *See id.* (citing *Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)),  Justice Baker pointed out that trial courts have broad discretion in choosing the proper sanction and that any sanction should be tailored to remedy the prejudice.

10.     Plaintiff requests that the Court instruct the jury to presume that the evidence destroyed would have been favorable to Plaintiff and is unfavorable to Defendant.  The Court may submit the instruction that the facts are presumed against the Defendant and that the Defendant bears the burden of disproving the presumed facts or issue.

11.     The presumption itself has probative value and may be sufficient to support the nonspoliating party's assertions.  *See Trevino*, 969 S.W.2d at 960.  In any event, at least one Texas court has held that the trial court erred in refusing to submit a spoliation instruction when the nonspoliating party had properly raised the issue. *Watson vs Brazos Elec. Power Coop, Inc.*, 918 S.W.2d 639 (Tex. App.-- Waco 1996, writ denied).

12.     Here, the circumstantial evidence implies that the videotapes were destroyed intentionally at Defendant's risk management offices in Florida.  The local employees testified that they understood the importance of the evidence recorded and one manager notified the other manager to pull and preserve the tapes, however, now that litigation has

5

commenced, Defendant claims that the tapes have been taped over in accordance with purported "company policy." The Court should presume that the tape was intentionally destroyed and sanction Defendant accordingly.

**III.**
**Prayer**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request a spoliation instruction/adverse inference ruling be submitted to the jury and for such other and further relief, at law or in equity, to which the Plaintiffs are justly entitled.

Respectfully submitted,

Anthony P. Troiani
State Bar No.: 00795914
Federal No. 20607
LAW OFFICE OF ANTHONY TROIANI
700 Paredes Avenue, Suite 107
Brownsville, Texas 78521
(956) 541-4235 Tel.
(956) 541-9174 Fax.

ATTORNEY IN CHARGE

6

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to all counsel of record pursuant to the FRCP on this 23rd day of April, 2001 to:

Mr. Douglas E. Chaves
CHAVES, GONZALES & HOBLIT, L.L.P.
2000 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78470

_____
ANTHONY TROIANI

## CERTIFICATE OF CONFERENCE

A conference has been held on the merits of this Motion with opposing counsel in charge of this case and she/he is:

____    I have been unsuccessful in my attempts to contact opposing counsel.

____    I have been unsuccessful in my attempts to discuss this matter with opposing counsel as said attorneys have not returned my telephone calls or responded to my letter.

_X__    This matter has been discussed with opposing counsel and no agreement on the Motion could be reached.

____    Opposing counsel has agreed or is unopposed to Movant's request under this Motion

_____
ANTHONY P. TROIANI

7

# PLAINTIFFS' MOTION FOR SPOLIATION

# EXHIBIT "A"
# Gonzalez Deposition - Pg. 74-75

CitiPDF - www.fastio.com

15:12:10 1   anymore.

15:12:12 2       Q.  Would it be possible for you all to look and

15:12:12 3   see if you have them?

15:12:14 4       A.  I can ask.  For '99?

15:12:16 5       Q.  For '99.

15:12:18 6       A.  Okay.

15:12:20 7       Q.  Now, can you show me what the line of sight is,

15:12:24 8   if you know, on these two?  I know that you had

15:12:29 9   verbally told me.

15:12:29 10      A.  This one you can see the wet rack up to here

15:12:32 11  and so forth.  I couldn't tell you the square footage

15:12:37 12  because I don't know.  But, you know, that's pretty

15:12:41 13  much it right there.  It would pick up some of the

15:12:44 14  tables.  It would pick up -- basically pick up the

15:12:46 15  aisle right here is what we're looking at.  And we're

15:12:50 16  looking in front of the wet rack.  We're looking in

15:12:52 17  front of this wet rack right there.

15:12:53 18      Q.  Okay.  And how -- the items that are displayed

15:13:01 19  on these cameras, where does that tape go to?  Or is

15:13:07 20  there like a master continuous run tape, or how do you

15:13:09 21  have it set up as far as your playback?

15:13:12 22      A.  As far as for reviewing it?

15:13:14 23      Q.  For reviewing it or storing it.

15:13:17 24      A.  We store them for a month, and then we reuse

15:13:19 25  them.

15:13:20  1      Q.  Even if you have an incident?

15:13:22  2      A.  No.  No, we pull it.  We pull it and we set it

15:13:26  3  aside.  We send it to our Boise people.

15:13:31  4      Q.  Okay.  And so if there was an incident on May

15:13:33  5  30th, 1999, you would have pulled those tapes?

15:13:37  6      A.  They should have been pulled.

15:13:38  7      Q.  Okay.  And if they weren't pulled, that was a

15:13:44  8  breakdown in the chain of command?

15:13:46  9      A.  If they weren't pulled, there was

15:13:49 10  miscommunication.

15:13:51 11      Q.  And do you know if those tapes were pulled?

15:13:53 12      A.  No, sir, I don't know.

15:13:55 13      Q.  Okay.  Fair enough.

15:13:58 14      A.  I honest to God don't.

15:14:01 15      Q.  I guess since you made this --

15:14:06 16      A.  But that's not, you know, exactly how

15:14:09 17  everything is.

15:14:10 18      Q.  No, I'm just asking for what you know.  I'm not

15:14:15 19  trying to say this is how it was arranged or anything.

15:14:25 20           What about -- okay.  When you do the

15:14:27 21  incident report, what are you taught or what are you

15:14:34 22  supposed to do when you fill out an incident report?

15:14:37 23  What do you tell your managers to do when they fill out

15:14:41 24  incident reports?

15:14:42 25      A.  First of all, they have to fill out all the

# PLAINTIFFS' MOTION FOR SPOLIATION

# EXHIBIT "B"
# Cortez Deposition - Pg. 23-26

CVisPDF - www.fastio.com

15:48:51 1    A.  Yes.

15:48:53 2    Q.  And how are they -- or how were they

15:48:58 3  merchandised at that -- well, you're not in the produce

15:49:00 4  section, are you?

15:49:01 5    A.  No, I'm not.  But I know how they were

15:49:04 6  merchandised.

15:49:06 7    Q.  How were they merchandised?

15:49:07 8    A.  They were just put on top, but they weren't in

15:49:10 9  boxes.

15:49:10 10   Q.  The key limes are small and round?

15:49:13 11   A.  Yeah.

15:49:14 12   Q.  And they fall off easily, correct?

15:49:16 13   A.  Yeah, they do.

15:49:17 14   Q.  Okay.  And it was a high traffic day that day,

15:49:24 15  right?

15:49:24 16   A.  Yes.

15:49:27 17   Q.  A lot of people coming in looking through

15:49:31 18  different sections of the store.  Do you know if there

15:49:34 19  was high volume in the produce section that day?

15:49:37 20   A.  I don't know because I'd just came in.

15:49:41 21   Q.  That's right.  That's fine.  Did you take any

15:49:46 22  photographs of Ms. Taitague?

15:49:49 23   A.  Yes, I did.

15:49:50 24   Q.  Okay.  What photographs did you take?

15:49:52 25   A.  I think I took some pictures of the floor, and,

15:49:57 1    I guess, of her ankle.

15:50:01 2      Q.  Okay.

15:50:01 3      A.  Things like that.  I know I took pictures.

15:50:06 4      Q.  And who did you give the photos to?

15:50:09 5      A.  I gave them to my store director.

15:50:11 6      Q.  And then do you know what he was supposed to do

15:50:14 7 with the photos after that?

15:50:16 8      A.  I believe he was supposed to send -- I believe

15:50:19 9 they're supposed to get sent to the claims office.

15:50:21 10      Q.  Okay.  So you recall taking photos of the

15:50:24 11 floor, of her ankle, of her shoes?

15:50:27 12      A.  Shoes.  Her ankles, and her shoes were right

15:50:31 13 there too.

15:50:32 14      Q.  Right, she was wearing her shoes at the time.

15:50:35 15 Do you recall taking photos of the display stands or

15:50:39 16 the area where she fell other than just the floor?

15:50:51 17      A.  I don't remember.

15:50:52 18      Q.  Okay.  You may or may not have?

15:50:55 19      A.  Yeah.

15:50:55 20      Q.  Okay.  What about the surveillance cameras?  Do

15:51:03 21 you have anything to do with pulling those tapes

15:51:05 22 because there is an incident?

15:51:07 23      A.  No, I let the store director know.

15:51:10 24      Q.  Okay.  And that day it would have been a store

15:51:12 25 manager since the store director wasn't in, right?  Or

BRYANT & STINGLEY, INC.
McAllen      Harlingen      Brownsville
(956)618-2366   (956)428-0755   (956)542-1020

15:51:15 1   tell me how it happened.

15:51:18 2        A.   How what happened?

15:51:19 3        Q.   How you told the store director about the

15:51:23 4   incident.

15:51:23 5        A.   How I told him?

15:51:25 6        Q.   Let me back up.

15:51:26 7        A.   Basically I took the report, and I let him know

15:51:29 8   that there was a lady that fell.  I know that every

15:51:33 9   time somebody falls we're supposed to pull the tapes,

15:51:40 10  and I let him know.

15:51:41 11       Q.   Who did you let know specifically?

15:51:44 12       A.   I think I let Mr. Gonzalez know.

15:51:48 13       Q.   Sal Gonzalez?

15:51:49 14       A.   Yes.

15:51:50 15       Q.   He was there that day or the next day?

15:51:53 16       A.   No, he was there.

15:51:54 17       Q.   On May 30th?

15:51:57 18       A.   Yeah.

15:51:57 19       Q.   Okay.  Okay.  And so whenever there is an

15:52:06 20  incident, you pull the tapes, right?

15:52:08 21       A.   Yeah, we'll let the other managers know and

15:52:12 22  also the store director.

15:52:13 23       Q.   You personally don't pull the tapes, but it's

15:52:15 24  company policy or store policy to pull the tapes from

15:52:17 25  that day?

15:52:18 1      A.   Yes.

15:52:19 2      Q.   And you took the photos like you were supposed

15:52:21 3   to?

15:52:22 4      A.   Right.   And I did the report, and I let them

15:52:26 5   know that there was a lady that fell and to pull the

15:52:31 6   tapes.

15:52:32 7      Q.   Okay.

15:52:33 8      A.   And from there I did the report and I put it on

15:52:37 9   his desk.   We're supposed to call it in.   We called it

15:52:41 10   in.

15:52:41 11      Q.   Who do you call it in to?

15:52:46 12      A.   It's called central reporting.   I believe it's

15:52:47 13   up in Boise.   They ask you -- they ask you the

15:52:51 14   questions and things like that, and they give you a

15:52:53 15   claim number, and you write it on the top.   You turn it

15:52:57 16   in to the store director along with everything else

15:53:01 17   that you took, like the pictures and everything.

15:53:04 18      Q.   Since you took down all the incident reports,

15:53:08 19   how many incident reports do you have to take on a

15:53:12 20   weekly basis normally at the store?

15:53:15 21      A.   On a weekly basis?

15:53:16 22      Q.   Yeah.

15:53:20 23      A.   I think it would be -- because it's four of us

15:53:24 24   there that take incident reports, and I don't know how

15:53:30 25   many there are a week.   But, as for me, not that many.

# PLAINTIFFS' MOTION FOR SPOLIATION

# EXHIBIT "C"
# DEFENDANT'S DISCOVERY RESPONSES

CVisPDF - www.fastio.com

**<u>INTERROGATORY NO.  8:</u>** Were any photographs taken of Plaintiff Alma Taitague's injuries at the time of the alleged accident?  If so, state who has custody, control and possession of said photographs?

**<u>ANSWER:</u>**

No.

**REQUEST FOR PRODUCTION NO. 4:** Produce each photograph, motion picture, video tape recording, map, chart, diagram, measurement, survey, tape recording or other documents, recording or other tangible things which concern the events made the basis of this lawsuit or in any manner relate to damages suffered by any person.

**RESPONSE:**

> Photographs may be reviewed in defense counsel's office, 418 East Dove, McAllen, Texas, Monday through Friday, 8:30 a.m. to 5:00 p.m. upon reasonable notice.

**REQUEST FOR PRODUCTION NO. 8:** Produce any and all documents, photographs, videotapes and other tangible things you may seek to introduce into evidence at the time of trial of this cause.

**RESPONSE:**

> This Defendant will supplement this request.

**REQUEST FOR PRODUCTION NO. 9:** Produce any store surveillance video tapes taken of the area where the alleged incident at issue in this lawsuit occurred.

**RESPONSE:**

> None.

**REQUEST FOR ADMISSION NO. 6:** Admit or deny that Defendant had a surveillance camera in the area where the Plaintiff Alma Taitague fell at the time of the incident at issue in this lawsuit.

**RESPONSE:**

Admit.

## REQUEST FOR PRODUCTION NO. 1:

Produce any store surveillance video tapes taken on June 2, 2000 of the area where the alleged incident at issue in this lawsuit occurred.

## RESPONSE:

Defendant objects to this request for production as being irrelevant and overly broad in that it does not concern the date of Plaintiff Alma Taitagure's alleged fall.

The videotapes used in all Albertson's stores are reused every 60 days, unless a request is made within that time frame to preserve the tape in question. Therefore, Defendant is unable to produce the videotape which recorded the scene where Plaintiff Alma Taitague fell on May 30, 1999.

## REQUEST FOR PRODUCTION NO. 2:

Produce any store surveillance video tapes taken on June 16, 2000 of the area where the alleged incident at issue in this lawsuit occurred.

## RESPONSE:

Defendant objects to this request for production as being irrelevant and overly broad in that it does not concern the date of Plaintiff Alma Taitagure's alleged fall.

The videotapes used in all Albertson's stores are reused every 60 days, unless a request is made within that time frame to preserve the tape in question. Therefore, Defendant is unable to produce the videotape which recorded the scene where Plaintiff Alma Taitague fell on May 30, 1999.

## REQUEST FOR PRODUCTION NO. 3:

Produce any store surveillance video tapes taken on September 5, 2000 of the area where the alleged incident at issue in this lawsuit occurred.

## RESPONSE:

Defendant objects to this request for production as being irrelevant and overly broad in that it does not concern the date of Plaintiff Alma Taitagure's alleged fall.

The videotapes used in all Albertson's stores are reused every 60 days, unless a request is made within that time frame to preserve the tape in question. Therefore, Defendant is unable to produce the videotape which

recorded the scene where Plaintiff Alma Taitague fell on May 30, 1999.

CliMPDF – www.fastio.com

# PLAINTIFFS' MOTION FOR SPOLIATION

# EXHIBIT "D"
# INCIDENT REPORT

CIttPDF - www.fastio.com

Case 1:00-cv-00099   Document 27   Filed in TXSD on 04/23/2001   Page 81 of 91

JRK

# *Confidential* Customer
# Incident Report



**SLIP & FALL**

| | |
|---|---|
| Claim Number: **GL1999TX001178** | Incident Date: **05/30/1999** |
| Unit Number: **4084** | Local Incident Time: **13:45** |
| Phone: **(956) 542 -6227** | ARMIS Entry Date: **05/31/1999** |
| Address **3355 BOCA CHICA BLVD** | ARMIS Entry Time: **08:17** |
| **BROWNSVILLE         TX   78520** | |
| Store Director: **SAL GONZALEZ** | Investigating Employee: **RENE CORTEZ** |

**Claim Information**

Social Security #: **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**     Employer: *Works for Atty*     Occupation:
Name: ~~Enter~~ **ALMA         TAITAQUE**                Sex: **F**
Address: **1300 SQUAW VALLEY DR      #B**                Height:          Weight:
**BROWNSVILLE         TX         78520**              Birth Date:
Phone Numbers: (H) **956-350-4127**   (W) **956-541-4235**    Age/Estimated Age: **0**
Is the customer recognized as a frequent patron? **U**     Spouse's name (if married): *Bill*
Is the customer a minor? **N**     Parent(s) or Guardian(s):

**Incident Details**

Where on premises did the incident occur? **SFLR - Produce**
Name of unit's CAM Director:
Name of parking lot service:
Weather conditions: **Clear, dry**     Did the customer complain of inadequate lighting? **N**
Description of incident: **S/F KEY LIME/FELL ON HAND/ SWOLLEN L/ANKLE**

Claimant's version of incident: **SAME**
Condensed description of the accident: **S/F KEY LIME/ SWOLLEN ANKLE**
Does the unit agree with the claimant's version? **U**
Explain why claimant's version is questioned:

Type of footwear worn: **Sandals/flip flops/birkenstocks**
Was foreign substance stuck to footgear? **N**
Describe foreign substance on footgear:
Did customer allege any debris/foreign substance in area? **Y**
Describe alleged debris/foreign substance: **KEY LIME**
Did store's investigation verify existence of alleged debris/foreign substance? **N**
Source of debris/foreign substance:
    If from defective container, describe:
    If defective container involved, has unit preserved it as evidence?
    How much of an area did it cover?
    How long had the debris/foreign substance been there?
    How did the unit determine the length of time?
Is the janitorial service involved? **N**     Name of janitorial company:
Was any employee aware of the condition prior to the incident?
    Name of employee aware:
    Reason for awareness:
How often is the area inspected? **HRLY**
How long before the incident was the area inspected? **15 MIN**     Was it clear at that time? **Y**
Employee who did last inspection: **UNK**
Who inspected the area after the incident? **RENE CORTEZ**
    Did the substance appear slipped on?
Did the incident occur on non-skid flooring? **N**
Were caution cones out? **N**   Number of cones:     Cone distance:
Were mats out? **N**     Number of mats:     Mat distance:
Is there any defective equipment to be repaired or replaced? **N**     If so, describe:
Are any photos, videotape, or paperwork being forwarded? **PHOTOS/ VIDEO(?)** Blue Slip & Fall form? **N**
Should the customer be contacted? **Y**     If no, explain:

**FAXED**
**MAY 31 1999**

**Injury Details**   Will the customer require medical attention? **U**
Name of hospital if taken by ambulance:
What part of body was injured? **ankle-left**     Describe the type of injury: **strain muscle or ligament-other**

**First Witness Information**          **Second Witness Information**
Name:                     Name:
Address:                   Address:

Phone number:                Phone number:
Category of witness:             Category of witness:
Witness comments:              Witness comments:

Date of unit's first notice of incident: **05/30/1999**    Operator ID: **GORMJCS**
Time of unit's first notice of incident: **13:45**      Adjusting Office: **500**

# PLAINTIFFS' MOTION FOR SPOLIATION

# EXHIBIT "E"
# PHOTOGRAPHS OF BLACK SANDALS

CibiPDF - www.fasiio.com



Xerox





IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ALMA TAITAGUE and BILL TAITAGUE        §
                                       §
                                       §
VS.                                    §        CIVIL ACTION NO. B-00-099
                                       §
                                       §
ALBERTSON'S, INC.                      §

## ORDER SETTING HEARING

Plaintiffs' Motion for Spoiliation Instruction and Memorandum in Support having

come before the Court and the Court after considering same hereby sets it for hearing on

the _____ day of _____, 2001, at _____ o'clock ___.m.

SIGNED FOR ENTRY this _____ day of _____, 2001.

_____

JUDGE PRESIDING

8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ALMA TAITAGUE and BILL TAITAGUE        §
                                        §
                                        §
VS.                                     §        CIVIL ACTION NO. B-00-099
                                        §
                                        §
ALBERTSON'S, INC.                       §

## ORDER

On this the day came to be heard Plaintiffs' Motion for Spoiliation Instruction and

Memorandum in Support having come before the Court and the Court after hearing the

arguments of counsel and considering the motions presented finds the following:

Plaintiffs' request for and adverse inference ruling shall be: **Granted**

IT IS FURTHER ORDERED THAT the jury will be instructed that there is a

rebuttable presumption as to the Defendant's negligence.

SIGNED FOR ENTRY this _____ day of _____ , 2001.


_____
JUDGE PRESIDING

9

# JOINT PRE-TRIAL ORDER EXHIBIT "D"

CVisPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

.

| | | |
|---|---|---|
| ALMA TAITAGUE and BILL TAITAGUE | § | B-00-099 _____ |
| | § | C.A./C.R. No. |
| | § | |
| | § | _____ |
| VS. | § | JUDGE |
| | § | |
| | § | _____ |
| | § | COURTROOM CLERK |
| | § | |
| | § | _____ |
| | § | COURT REPORTER |
| | § | |
| | § | TRIAL_____ |
| ALBERTSON'S, INC._____ | § | PROCEEDING |

## PLAINTIFFS' EXHIBIT LIST

| NO. | DESCRIPTION | OFFR | OBJ | DATE | |
|---|---|---|---|---|---|
| | | | | ADMIT | N/ADMIT |
| 1 | Black Sandals | | | | |
| 2 | Business records of Enrique Griego, M.D. | | | | |
| 3 | Business records of Ples L. Kujawa, M.D. | | | | |
| 4 | Business records of Northeast Methodist Ambulatory Surgery | | | | |
| 5 | Business records of Star Anesthesia, P.A. | | | | |
| 6 | Business records of Rio Grande Valley Imaging Center | | | | |
| 7 | Business records of Dee L. Martinez, M.D. | | | | |
| 8 | Business records of James Key, M.D. | | | | |
| 9 | Business records of Brownsville Physical Therapy Associates | | | | |

.

| 10 | Business records of Industrial Mobility Rehabilitation Center | | | | |
|---|---|---|---|---|---|
| 11 | Business records of Southern Orthopedics | | | | |
| 12 | Business records of Brownsville Medical Center | | | | |
| 13 | Business records of Anant Utturkar, M.D. | | | | |
| 14 | Business records of William McKinney, M.D. | | | | |
| 15 | Business records of Allan Kapilivsky, M.D. | | | | |
| 16 | Deposition of Salvador Gonzales with Exhibits | | | | |
| 17 | Deposition of Rene Cortez | | | | |
| 18 | Deposition of Ples L. Kujawa, M.D. with videotape and exhibits | | | | |
| 19 | A set of (4) photographs of black sandals | | | | |
| 20 | Defendant's Answers to Plaintiffs' First Set of Interrogatories | | | | |
| 21 | Defendant's Responses to Plaintiffs' First Set of Request for Production | | | | |
| 22 | Defendant's Responses to Plaintiffs' First Set of  Request for Admissions | | | | |
| 23 | Defendant's Responses to Plaintiffs' Second Set of Request for Production | | | | |
| 24 | Defendant's sweep sheets | | | | |
| 25 | Incident report | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |