IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 4 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ALMA T. TAITAGUE and BILL TAITAGUE | § |
| | § |
| VS. | §    CIVIL ACTION NO. B-00-99 |
| | § |
| ALBERTSON'S, INC., | § |

### DEFENDANT, ALBERTSON'S, INC.'S, MOTION TO WITHDRAW OR AMEND ADMISSIONS

NOW COMES, ALBERTSON'S, INC., Defendant in the above-styled case and files this its Motion to Withdraw or Amend its Answers to Plaintiffs' Request for Admissions.

I.

Defendant, ALBERTSON'S, INC., would ask the Court to permit it to withdraw or amend its Answers to Plaintiffs' Request for Admissions.

Plaintiffs, ALMA T. TAITAGUE and BILL TAITAGUE, have filed suit against Defendant, ALBERTSON'S, INC., alleging that they have filed suit as a result of a slip and fall in the produce department of Defendant's store, located in Brownsville, Texas. Plaintiffs allege that ALMA T. TAITAGUE was shopping for produce when she allegedly slipped and fell on a keylime located on Defendant's floor, which resulted in a twisted ankle and damage to her left shoulder.

II.

Plaintiff propounded its Request for Admissions on Defendant. Defendant served its answers to those admissions on September 29, 2000. *See* Exhibit "A" attached hereto.

In Request for Admission No. 7, Plaintiffs ask the following:

<u>Request for Admission No. 7</u>: Admit or deny that Plaintiff Alma Taitague fell on a lime located in Defendant's produce section.

<u>Response:</u> Admit.

III.

At this time Defendant, ALBERTSON'S, INC., would ask the Court to either withdraw or allow it to amend its Response to Request for Admission No. 7. Defendant would assert that there has been no deposition testimony, statements, or any other evidence produced in discovery, which conclusively indicates that Mrs. Taitague fell on the key lime in question. In fact, Mrs. Taitague testified in her deposition that she never saw the lime in question prior to her fall[1], it was not squashed[2], and it was still rolling on the ground after the fall[3]. Furthermore, aside from its Response to Request for Admission No. 7, Albertson's has never represented that Mrs. Taitague in fact fell on the key lime in question.

IV.

Pursuant to Federal Rule of Civil Procedure 36b, the Court may permit withdrawal or amendment of an answer to a Request for Admission, if the presentation of the merits

---

[1] Alma Taitague's Deposition Page 13, Line 4 as Exhibit B.
[2] See Alma Taitague's Deposition at Page 20, Line 1 as Exhibit B.
[3] See Alma Taitague's Deposition at Page 19, Line 17 as Exhibit B.

Motion to Withdraw or Amend Admissions

2

of the action will be subserved thereby and the party who obtained the admission failed to satisfy the Court that with withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. Federal Rule of Civil Procedure 36(b) permits withdrawal if it will facilitate the development of the case in reaching the truth, as in those cases where a party's admission are inadvertently made. *Reyes v. Vantage S.S. Co.*, 672 F.2d 556, 557-58 (5th Cir.1982).

V.

For these reasons, Defendant ALBERTSON'S asks the court to permit it to withdraw or amend its Response to Plaintiff's Request for Admission No. 7.

Respectfully Submitted

CHAVES, GONZALES & HOBLIT, L.L.P.
2000 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, TX 78470
(361) 888-9392
(361) 888-9187 (facsimile)

By: _____
Douglas E. Chaves
Attorney-in Charge for Defendant
ALBERTSON'S, INC.
State Bar No. 04161400
Federal I.D. # 1895

Of Counsel:

CHAVES, GONZALES, & HOBLIT, L.L.P.
2000 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, TX 78470
(361) 888-9392 - telephone
(361) 888-9187 - facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing instrument has been served upon all counsel of record to this proceeding by the manner indicated below, on this __23rd__ day of April, 2001.

_____
Douglas E. Chaves

**VIA CERTIFIED MAIL/RRR:**

MR. ANTHONY TROIANI
LAW OFFICES OF ANTHONY TROIANI
700 Paredes Avenue, Suite 106
Brownsville, Texas 78520

# EXHIBIT "A"

D-28812/3506    MOV:pdv         9/29/00

## CAUSE NO. 2000-CCL-497-B

| ALMA T. TAITAGUE AND BILL TAITAGUE | § | IN THE COUNTY COURT AT LAW |
|---|---|---|
| VS. | § § § | NO. 2 |
| ALBERTSON'S, INC. | § | CAMERON COUNTY, TEXAS |

### DEFENDANT ALBERTSON'S, INC. RESPONSES AND OBJECTIONS TO PLAINTIFF ALMA T. TAITAGUE'S REQUESTS FOR ADMISSION

TO:    ALMA T. TAITAGUE, by and through her attorney of record:

Mr. Anthony Troiani
**LAW OFFICES OF ANTHONY TROIANI**
700 Paredes Avenue, Suite 106
Brownsville, Texas 78520

**NOW COMES ALBERTSON'S INC.**, Defendant in the above-entitled cause of action, and files this its answers and objections to Plaintiff's Requests for Admission pursuant to Texas Rule of Civil Procedure 198.

Respectfully submitted,

THORNTON, SUMMERS, BIECHLIN, DUNHAM & BROWN, L.C.
418 East Dove
McAllen, Texas 78504
(956) 630-3080
(956) 630-0189 fax

BY: _____Miriam O. Victorian_____
MIRIAM O. VICTORIAN
State Bar 20576700

ATTORNEY FOR DEFENDANT
ALBERTSON'S, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been forwarded to the following counsel of record, via certified mail, return receipt requested on September 29th, 2000.

Mr. Anthony Troiani
**LAW OFFICES OF ANTHONY TROIANI**
700 Paredes Avenue, Suite 106
Brownsville, Texas 78520
(956) 541-4235
(956) 541-9147 (fax)

_____
**MIRIAM O. VICTORIAN**

## REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:** Admit or deny that Defendant has been sued in its proper capacity.

**RESPONSE:**

    Admit.

**REQUEST FOR ADMISSION NO. 2:** Admit or deny that Defendant was a proximate cause of the incident at issue in this lawsuit.

**RESPONSE:**

    Deny

**REQUEST FOR ADMISSION NO. 3:** Admit or deny that Defendant was open to the public on May 30, 1999 and operating as a grocery store.

**RESPONSE:**

    Admit

**REQUEST FOR ADMISSION NO. 4:** Admit or deny that Plaintiff Alma Taitague was not contributorily negligent in connection with the incident at issue in this lawsuit.

**RESPONSE:**

    Deny

**REQUEST FOR ADMISSION NO. 5:** Admit or deny that Defendant's agent or employee had not made any examination or inspection of the area where the Plaintiff Alma Taitague fell prior to the incident at issue in this lawsuit.

**RESPONSE:**

    Deny

**REQUEST FOR ADMISSION NO. 6:** Admit or deny that Defendant had a surveillance camera in the area where the Plaintiff Alma Taitague fell at the time of the incident at issue in this lawsuit.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 7:** Admit or deny that Plaintiff Alma Taitague fell on a lime located in Defendant's produce section.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 8:** Admit or deny that Plaintiff Alma Taitague suffered personal injuries as a result of said slip and fall.

**RESPONSE:**

Deny

**REQUEST FOR ADMISSION NO. 8:** Admit or deny that Defendant has hired a private investigator to assist in its defense of this claim.

**RESPONSE:**

Deny.

# EXHIBIT "B"

Case 1:00-cv-00099   Document 28   Filed in TXSD on 04/24/2001   Page 10 of 13

ClibPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ALMA T. TAITAGUE and | )( |
| BILL TAITAGUE, | )( |
|     Plaintiffs | )( |
| | )( |
| VS. | )( CIVIL ACTION NO. B-00-99 |
| | )( |
| ALBERTSON'S, INC., | )( |
|     Defendant | )( |

ORAL DEPOSITION OF
ALMA T. TAITAGUE
APRIL 9, 2001

    ORAL DEPOSITION OF ALMA T. TAITAGUE, produced as a witness at the instance of the DEFENDANT, taken in the above styled and numbered cause on APRIL 9, 2001, reported by CORINNA N. GARCIA, Certified Court Reporter No. 5210, in and for the State of Texas, at the Law Offices of Anthony P. Troiani, 700 Paredes Avenue, Suite 106, Brownsville, Texas, pursuant to the Federal Rules of Civil Procedure.

BRYANT & STINGLEY, INC.

| McAllen | Harlingen | Brownsville |
|---|---|---|
| (956)618-2366 | (956)428-0755 | (956)542-1020 |

ClibPDF - www.fastio.com

Page 10

1  Mr. Troiani?
2     A. No.
3     Q. So is this the only claim you've ever filed?
4     A. Yes.
5     Q. Okay. We're here today as a result of an
6  accident which occurred at Albertson's, correct?
7     A. Yes.
8     Q. Go ahead and tell me in your own words what
9  happened that day.
10    A. That day that we walked in was May 30th of
11 1999. We walked in to do some shopping. Walked in
12 through the deli section, proceeded into -- I wanted to
13 buy some luncheon meat, but there was a line at the
14 deli section. So we proceeded into the produce
15 section, went towards the end, got some potatoes, got
16 some onions. Then I remembered I needed to get some
17 other produce which was towards the deli. I walked
18 back down towards the deli section, but
19 towards -- well, towards the front of the produce
20 section, came around, walked into an aisle, and
21 proceeded to go get a plastic bag. As I proceeded to
22 go get a plastic bag, I slipped and fell. My ankle
23 just went under me, landed on one knee, on my right
24 knee, put my hands out so that I could break my fall so
25 that I wouldn't hit my face, and, basically, landed on

Page 11

1  the floor. And as I landed on the floor, I looked and
2  I saw a lime still rolling into the main aisle.
3     Q. Okay. So this accident occurred on May 30th?
4     A. Yes.
5     Q. 1998?
6     A. '99.
7     Q. I'm sorry, '99. This is at Albertson's. Which
8  store, by the way?
9     A. Brownsville.
10    Q. Brownsville. Do you remember the street it was
11 on?
12    A. It's on --
13    Q. Is it Boca Chica?
14    A. Boca Chica and International, I believe.
15    Q. Do you remember what time this occurred at,
16 approximate time?
17    A. This occurred approximately about 1:00 o'clock
18 or a little bit after 1:00 o'clock.
19    Q. p.m.?
20    A. Yes.
21    Q. Okay. So you previously testified that you had
22 gotten some carrots and some potatoes?
23    A. Potatoes and onions.
24    Q. Okay. And that's all in the same vicinity,
25 which is the produce section?

Page 12

1     A. Yes.
2     Q. Okay. About how long were you in the produce
3  section before your fall?
4     A. We were in the produce section about, maybe, 15
5  minutes.
6     Q. Okay. Now, this place where you were getting
7  bags, the baggies, is that by the key lime bin?
8     A. Yes.
9     Q. It is? Okay.
10    A. Well, the key lime bin was across from the
11 plastic bags.
12    Q. Okay.
13    A. And was in the same aisle.
14    Q. Now, for the potatoes and the carrots, did you
15 get the plastic bags all from that same area as well
16 previously?
17    A. No, towards the end. They have plastic bags
18 back there, so --
19    Q. So as you approached the key lime area to
20 obtain a plastic bag, was that the first time that
21 you'd been in that area that day?
22    A. Yes.
23    Q. Okay. And if I understand correctly, you were
24 walking, and then you fell?
25    A. Yes, I was walking and I stepped on the lime

Page 13

1  and my ankle went -- my left ankle went under me and I
2  landed on my right knee. And I put my hands out to
3  break my fall and I fell.
4     Q. Do you remember looking down as you were
5  walking? I mean, did you see the key lime?
6     A. No, sir. I was looking at the displays, at the
7  prices of the apples. And I was looking towards eye
8  level.
9     Q. Do you know for a fact that you did actually
10 slip on the key lime?
11    A. I saw the key lime rolling -- after I fell, I
12 saw the key lime still rolling into the main aisle.
13    Q. But do you know for a fact if you actually
14 stepped on the key lime?
15    A. Yes.
16    Q. Is that a "yes"?
17    A. Yes.
18    Q. And how do you know that?
19    A. Because I stepped on it and I felt -- when I
20 stepped on the key lime, I felt it slip, and that's
21 when I -- my ankle -- my left ankle went under me. So
22 I felt something. I stepped on something.
23    Q. But do you know for a fact it was the key lime?
24    A. Yes.
25    Q. And you know that because you saw it rolling?

Page 18

1  Q. Did you have any conversations with the produce
2  person?
3  A. No.
4  Q. No. And what did you tell Mr. Cortez when he
5  arrived?
6  A. Basically, when Mr. Cortez arrived, my husband
7  spoke to him with regard to the fact that I had fallen.
8  And then he left to go get an incident report and a
9  camera.
10  Q. So did you have any actual conversations with
11  Mr. Cortez?
12  A. When I -- when he filled out the incident
13  report, I answered all his questions.
14  Q. Did he ask you if you were injured?
15  A. Yes.
16  Q. And what did you tell him?
17  A. That I was, and I showed him my ankle.
18  Q. Did you tell Mr. Cortez that you were having
19  any type of pain in your shoulder area?
20  A. Not at that time. The only thing that I told
21  him was that my hands hurt from where I put my hands
22  out to break the fall, my knee hurt from where I landed
23  on it, and, of course, my ankle, which was swollen.
24  Q. But at that time you did not have any pain in
25  your shoulder area?

Page 19

1  A. Not at that time.
2  Q. Okay. Now, you say you slipped on this key
3  lime. Do you know how long the key lime had been
4  there?
5  A. No, sir, I don't.
6  Q. Do you have any idea how it got there?
7  A. No.
8  Q. Did you actually see the key lime after the
9  accident?
10  A. After the accident, it was in the middle of
11  the aisle, main aisle, before the lady picked it up and
12  put it back on the lime bin.
13  Q. Okay. But, before, you testified you saw it
14  rolling.
15  A. Yes.
16  Q. Did you see --
17  A. After I fell and I was on the floor, I saw the
18  key lime rolling. It rolled into the main aisle, and
19  it stopped in the main aisle. And then the lady went
20  over and picked it up and put it back on the key lime
21  bin.
22  Q. So did you ever see its color? Was it green?
23  A. Yes.
24  Q. Did it look fresh?
25  A. Yes.

Page 20

1  Q. Then you say you stepped on it. Was it
2  squashed?
3  A. No.
4  Q. But it was fresh?
5  A. As far as I could tell.
6  Q. Now, you say this lady picked it up and put it
7  back on the bin?
8  A. Yes.
9  Q. So, as far as you know, that key lime stayed
10  there the rest of that day, maybe, on the bin?
11  A. As far as I know.
12  Q. Okay. I just want to get a little idea about
13  where this key lime -- or, actually, where you slipped.
14  About how far away were you from the key lime bin when
15  you fell?
16  A. I was right across from it at the plastic
17  bag -- plastic bags are at the corner, on the aisle,
18  and I was right across from -- key limes were in the
19  middle, and I was in the corner on the other -- the
20  same aisle, but on the other side.
21  Q. About how many feet is the key lime bin from
22  where you fell?
23  A. I don't know.
24  Q. Three feet, two feet?
25  A. I don't think it was three feet. I don't know.

Page 21

1  Q. Aside from the rolling key lime, was there any
2  other debris on the floor?
3  A. Other than the rolling lime, that's all I
4  noticed at that time.
5  Q. Let me ask you this. If -- if you would have
6  been looking down while you were walking, do you think
7  you could have seen the key lime?
8  A. I go in to do the shopping, and I'm looking at
9  the produce that I'm buying. And -- I mean, I'm
10  looking at the produce that I'm buying. I'm not
11  expecting to be looking at the floor at all times.
12  Q. Right. But if you were looking down, do you
13  think you could have seen the key lime?
14  A. If I were looking down, I might have. But I
15  was looking at the produce that I was planning on
16  buying.
17  Q. I mean, was there anything that would have
18  restricted your view of the key lime?
19  A. No, other than I was looking at the produce.
20     THE WITNESS: Can we take a break?
21     MR. PERALES: Sure.
22     (Brief recess)
23  Q. I just want to get a better picture of where
24  this fall occurred. You have the plastic bags. Is
25  that across from the key lime bin?